[Filed June 10, 1885.]

## ANN R. WILSON AND MARY E. WAKEMAN v. NANCY WELCH ET AL.

RIPARIAN RIGHTS. — The rights of a shore-owner upon tide water or a navigable stream are not derived from the State, but are held in subordination to the rights of the public.

ID. — TIDE LAND ACT.—*Quære*, whether a shore-owner purchasing abutting tide lands under the Act of October 28, 1872, and amendments, gains any greater rights than he had before.

ID. — RIGHT TO PURCHASE. — The right given to shore-owners by said act was a mere. option to purchase, and does not constitute an equitable title.

CLATSOP COUNTY. Defendants appeal. Affirmed without costs.

The facts are stated in the opinion.

*Sidney Dell*, for Respondents.

*E. C. Bronaugh*, for Appellants.

XII. OREG. — 23.

THAYER, J.—This appeal is from a decree rendered in a suit commenced by the respondents against the appellants, to declare a trust in favor of the former in certain tide lands formerly conveyed by the State of Oregon to James Welch, ancestor of the appellants. The respondents alleged in their complaint in the suit that said James Welch procured said deed from the board of commissioners for the sale of school lands, etc., on the 18th day of September, 1876; that in his application for the purchase thereof he fraudulently represented that he was the owner of block 11, in the town of Astoria, which abuts upon said tide land, when in truth said block did not belong to him; that he and one Shively had, by deed bearing date June 3, 1846, conveyed it to John Wilson, ancestor of the respondents, and that the latter owned it at the time said application was made, and that no notice of any kind was given to him, or to anyone, by said Welch or said board, nor by any person, of the application; that both James Welch and John Wilson had since died, and that the appellants and respondents are their respective representatives and successors in interest, the respondent Ann R. Wilson being widow of the said John Wilson, and the said Mary E. Wakeman, a daughter; that the former owns a dower right in said block 11, and the latter owns the remainder.

The respondents further alleged that on August 29, 1877, they commenced an action against the appellants to recover the possession of said block 11, and that on March 27, 1878, they recovered a judgment against them, whereby it was adjudged that said John Wilson was the owner in fee of said block by virtue of said deed of June 3, 1846, until his death, and that they then became the owners thereof as mentioned, and entitled to the possession. They alleged, also, that they did not know the exact amount of purchase price paid by James Welch to the State of Oregon for said tide lands, but offered to pay the same when ascertained by the court. The appellants denied that said James Welch procured the deed from the State to the tide land by the representation alleged; denied that said block 11 abutted or fronted on the shore of the Columbia River; claimed that on said 30th day of June, 1846, it was above ordinary high-water

mark, but that since said time the water had gradually encroached upon the bank of the river, upon the north side of said block, and that the line of ordinary high tide had moved south until it then reached the north boundary thereof; that by said deed the said block thereby intended to be conveyed is bounded by metes and bounds, and the number and size of the lots expressly given, and that the deed was made solely with reference to said parcel of land as a platted block, and the parties intended it should not extend further on the north than the street known as "Wall Street," but which was by mistake designated in said deed as "Water Street," which lies in front of the block, and between it and said tide land; that in front of the block is a strip of land included within said street which was above ordinary high tide, and in front of the strip and of the street was a tide flat, extending for a distance of 700 feet, susceptible of being easily reclaimed, which flat, at the date of the purchase of the block by said John Wilson, was of great value; that from the north side of the flat it was 600 feet to the ship channel of the Columbia River, and that said space was valuable for wharfage purposes, and at the date of the deed was worth several thousand dollars; that it had been duly platted and laid off into lots and blocks, with streets extending through the same, which fact said Wilson well knew at the time he purchased block 11; that about 1845 said James Welch bought of said Shively all his right and property as riparian proprietor of the tide land in controversy; that the appellants had succeeded to his rights, and that they and said James Welch, for more than thirty years, had paid taxes on the land as their private property, and had paid $1,000 for street improvements.

These facts were in the main denied by the respondents in their reply. The proofs in the case show that said Shively, some time prior to the year 1846, settled upon a tract of land including said block 11; that he conveyed an undivided half of it to said James Welch; that they surveyed and laid off a part of it into lots and blocks; that Welch gave to Shively a power of attorney; that said Shively executed the deed for himself and said Welch to the said John Wilson, of June 3, 1846, to said

block 11; that after the passage of the Donation Act of September 27, 1850, the said Shively, after taking back a deed from Welch of the undivided half interest, entered the said tract of land as a donation claim, and subsequently, and in the year 1860, obtained a patent to it; that after his entry and compliance with the provisions of that act, said Shively reconveyed to said Welch a portion of the claim in severalty, which conveyance included said block 11. The deed to Wilson of June 3, 1846, purports to convey a parcel of land in the town of Astoria, described as being a part of the settlement rights of said Shively, on which he had laid out and surveyed said town, and which premises consisted of lots numbered from 1 to 12, inclusive, forming block 11, which it describes as being bounded north by Water Street, east by Spence Street, south by West First Street, and west by Pine Street, which lots it states were each fifty feet front by one hundred and forty-two and a half feet back; reference being had to the plat of said town of Astoria, so laid out as before mentioned, which plat had then been lithographed by E. & J. Ihltawa, of St. Louis, Missouri. The deed also contains a covenant to have said plat recorded as soon as there should be an office provided by law for that purpose. It also contains a covenant that the grantors will forever warrant and defend the fee-simple title to the premises, free from the claims of all persons whatever; also that the grantors, their heirs, executors, and administrators will, at the expense of the grantee, his heirs or assigns, make a new and further deed, if the same should be required to vest a fee-simple title, when they, or either of them, shall demand the same. The deed was not acknowledged or proved so as to entitle the same to record until March, 1876, and was recorded in the office of the clerk of the county of Clatsop in April of that year.

It further appeared in proof that said James Welch did base his right to purchase said tide land, when he made said application to purchase, upon the ground that he was the owner of said block 11, upon which it abutted at that time; and it further appears that at said time, and for a long time prior thereto, he had claimed to be the owner thereof, and that the appellants

continued to claim such ownership until the affirmance of the judgment by this court recovered against them as before mentioned. Proof was also given tending to show that there had been a narrow strip of high land adjoining said block 11 on the north, within the street called "Water Street," but that it had been carried away by the action of the water; but at what date it disappeared is not shown.

The land in controversy includes less than half an acre. It was purchased by said James Welch of said board of commissioners, under the provisions of the legislative assembly of the State to provide for the sale of tide and overflowed lands on the seashore and coast, approved October 28, 1872, as amended in 1874. That act provides that the owner of any land abutting, fronting, or bounded by the shore of any bay, harbor, or inlet on the sea coast, shall have the right to purchase from the State all the tide land belonging to the State in front of such owner or owners, subject to certain provisos which allow the owner of improvements upon such tide lands to purchase the lands so improved for a certain period, and also allow outside parties to become such purchasers in case the owner or owners of the high land fail to make application for the purchase of the same for three years; but in the latter case, the board of commissioners for the sale of such lands must give the owner or owners of the high land, having the preference in the purchase thereof, notice of such application to purchase the same, who thereupon have sixty days after the notice is given in which to make application to purchase it. It was conceded in this case that the said board of commissioners gave no such notice to said John Wilson or the respondents.

The appellants' counsel claims that if a strip of high land did exist north of block 11 on June 3, 1846, so that the wharf privileges remained in Shively and Welch after the execution and delivery of the deed of that date, such right and, as he claims, the consequent right to purchase the tide lands in front of that strip, would not be divested out of Welch and vested in Wilson by the act of the washing away of such strip of land before the passage of the said act. He also claims that the effect of the

descriptive part· of said deed, in·which the lots in said block are
conveyed by number and dimension, respectively, and then the
block bounded specifically by streets between which it lies, is suf-
ficient and conclusive evidence that it was the intention of the
grantors to limit the grant to the land contained within the
exterior boundary lines of the block, and to reserve the wharf
rights and privileges between the north line of said Water Street
and the ship channel.   The decision of this court in *Wilson* v.
*Shiveley*, 11 Oreg. 215, at the March term, 1884, was adverse to the
points raised by the counsel; still, as I view the question, they are
very important matters.   A shore-owner upon tide waters, or upon
a navigable stream, possesses rights which, of late, are conceded
to be property.   (*Yates* v. *Milwaukee*, 10 Wall. 497.)   They are
not rights, as has often been supposed, that were derived from
the State, though held and enjoyed in subordination to the rights
of the public.   (*Dalaplaine* v. *Chicago & N. W. Ry. Co.* 42 Wis.
214; *Lorman* v. *Benson*, 8 Mich. 18.)

The embarrassing feature of this subject has arisen out of a
misunderstanding of the nature of the State's ownership of land
between high and low water upon navigable streams.   It has
been spoken of as an· ownership in fee, and an·erroneous impres-
sion has been conveyed.   The State does own the channel of the
navigable rivers within its boundaries, and the shore of its bays,
harbors, and inlets between high and low water, but its owner-
ship is a trust for the public.   It has no such proprietorship in
them as it has in its property and public buildings.   It cannot
sell them so as to deprive the public of their enjoyment (*Provi-
dence Steam Engine Co.* v. *Providence & S. Steamship Co.* 12 R. I.
348); nor can it take away riparian rights, except for public use,
and by giving just compensation.   (Gould Waters, § 150.)   The
New York courts have taken a different view, and which has been
followed by an Iowa decision (*Tomlin* v. *Dubuque etc. R. Co.* 32
Iowa, 106); but it is repudiated by the federal and most of the
State tribunals.   If, then, the riparian rights referred to, such as
wharfage privileges, are property, they may be sold, or reserved
to the owner of high land upon which the tide land abuts.   There
is no reservation in terms in the deed of June 3, 1846; but if the

riparian rights belonging to Shively and Welch were not conveyed, which was the case if there was a strip of high land between said block 11 and the tide land in question not conveyed by the deed, they necessarily remained in them, and I do not see how they could be divested out of them without their consent, unless such rights are held to be inseparable from the upland. But that would not be consistent with the holding in *Parker* v. *Rogers,* 8 Oreg. 189.

Too much importance, I apprehend, has been attached to the tide-land act before referred to. I seriously doubt whether that act confers any new right upon the shore-owner in such cases, although he has purchased the land in front of him in accordance with its terms. The title he obtains is subordinate to the public right of passage and navigation, and he had the same wharfage privileges before as afterwards, and the right to protect his uplands from the encroachments of the sea. According to Hale there are three sorts of rights in ports and shores : *First,* the *jus privatum,* or right of property or franchise; *second,* the *jus publicum,* or public right of passage and navigation ; and *third,* the *jus regium,* or governmental right. The State could not, by any sale of the shore of a body of water below high tide, deprive itself of the latter right; nor, as before suggested, could it thereby deprive the public of the right of passage or navigation. What, then, can such a sale of that character of tide land amount to? I doubt very much whether a sale in such a case could be made to an outside party that would deprive the riparian owner of any right to the enjoyment of the land.

It was held in the case of *People* v. *Cowell,* 60 Cal. 400, that lands within the flow of ordinary tides, the cost of reclaiming which would greatly exceed their value when reclaimed for any agricultural purpose, were not acquirable under a statute authorizing a sale of reclaimable lands. The State might authorize a sale, doubtless, of tide flats, and the purchaser have the right to reclaim them and devote them to private use, where no right of public passage or navigation is infringed; but to attempt to sell a part of the channel of a navigable stream below any ordinary stage of high water, occasioned either by tides or freshets,

is absurd. But if I am mistaken in this view, and the State has an absolute ownership in such cases, as some of the authorities would seem to indicate, how can the respondents maintain their suit to declare a trust in their favor in the land in controversy ? They, nor their ancestors, never owned it legally nor equitably. Conceding their ownership of block 11, and that the tide land abutted upon it, that certainly gave them no ownership of the latter, if the title was in the State. The Act of 1872 graciously gave them, in that case, a preference in the purchase, but it prescribed conditions upon which the purchase can only be made. The respondents do not allege or show that they have ever attempted to comply with these conditions. It may be inferred that they consider the purchase by Welch, based upon his claim to be the owner of said block 11, made it unnecessary for them to apply ; but how does the court know that they would have purchased the land if Welch had not? The Act provides for a regular sale of such lands. Section 3 says that the applicant shall, with his application, present to the officer or officers who are or shall be authorized to sell such lands, evidence of his title to land which abuts, etc., upon such tide land ; and section 4 says that the value of such tide lands shall be appraised at a certain sum per acre, which shall not be less than $1.25 for each acre of such land ; provided, that the board having in charge the sale of such lands shall have power to set aside any appraisement on evidence taken of the true value of the same, and shall make another and true appraisement, based on such evidence.

The act did not contemplate that the applicant should get the land for less than its true value in any case, and the legal privilege in favor of the shore-owner was merely to buy the land for what it was actually worth. In such cases many shore-owners might not be inclined to attempt to make such purchase. Whether the respondents would have been so disposed is left entirely to conjecture; and yet they now claim that Welch's title should inure to their benefit. I can readily understand that where one has the equitable title to real property, the legal title to which is outstanding, and another person wrongfully buys in

such legal title, a court of equity could decree that the legal title so purchased should inure to the benefit of the equitable owner. To grant such relief, however, in favor of one who never had the equitable title, who had merely an option to purchase the property upon such terms as might be agreed upon with the owner, and who had never proposed to make the purchase, or indicated any intention of that character, would be carrying the doctrine to an unjustifiable extent. I think the respondent's remedy in this case, under the theory that the State had the absolute title to the property in question, and had conveyed it to James Welch, was to have the State commence an action for the purpose of vacating the patent or deed executed to him, as provided in section 355 of the Civil Code; and when a judgment has been obtained annulling it, make their application for the purchase of the land.

But as before suggested, I do not think the sale affected the rights of the owners of the land upon which the tide land abutted. The main question in the case, as I regard it, is as to whom these rights belonged. If, by the terms of the deed of June 3, 1846, from Shively and Welch to John Wilson, they were reserved to the former, then they are rightfully in the appellants; but if no such reservation was made in that instrument, then the respondents succeeded to them whenever they became shore-owners. The rights which attached to the narrow strip, which counsel for the appellants claims was not conveyed by the deed, and which existed as a mere incident of that parcel of land, were lost when it was washed away. The courts have usually held, where the question has arisen, that where a lot or block is bounded in a deed by a street, the deed operates to convey the land to the center of the street. Under such a construction it is quite evident that the deed of June 3, 1846, conveyed the high land adjacent to and on the north side of said block 11. I am informed that this court has so ruled, and I must consider that ruling as decisive of the question. But if the deed referred to showed an evident intent to reserve the said riparian rights to the grantors, they and their successors should be adjudged the owners thereof. In *Codman* v. *Winslow*, 10 Mass.

149, it was held that a deed to a tract of land bounded on a street or way would not be construed as extending across the street or way so as to include other lands and flats below high-water mark. Such a construction might have been applied in this case if the said grantors had owned the land below high-water mark. But where the right to the latter land is only incidental to the ownership of the high land, I think it would not be separated therefrom without a special reservation in such grant, and I am unable to discover any such reservation in the deed of June 3, 1846. Besides, Welch himself does not seem to have supposed that his right to purchase from the State arose out of any such reservation, as he based it upon his alleged ownership of block 11. I am of the opinion, therefore, that the equities are with the respondents, and that they should have a decree enjoining the appellants from interfering with their riparian rights in front of said block under and by virtue of said deed from the State, which is the extent of the relief I think they are entitled to, and that neither party should recover costs.

WALDO, C. J., and LORD, J., concur in the result, but upon different grounds.