## WELCH *v.* OREGON RAILWAY AND NAV. CO.

[56 Pac. 417.]

1. WHARVES—TIDE LAND—ESTOPPEL.—An owner of upland bordering on a navi‑ gable stream, having a right to build a wharf at deep water in front of his property who transfers his wharf privilege is thereby estopped from object‑ ing to the maintenance of a wharf built on the faith of his conveyance, even though he subsequently acquires from the state the tide land between the upland and the wharf: *McCann* v. *Oregon Ry. & Nav. Co.*, 13 Or. 455, followed.

2. TIDE LAND—INJUNCTION.—A tide land owner who does not have access there‑ from to deep water because of a wharf in front of him cannot restrain the wharf owner from constructing below low water mark an approach to his property, since the tide land owner has no water rights to be affected.

From Clatsop :  THOS. A. MCBRIDE, Judge.

This suit was brought in 1883 by James W. Welch to enjoin the Oregon Railway and Navigation Company from constructing a wharf in the Columbia River in front of water blocks 132 and 133 in the town of Astoria.  The facts, as they appear from the record, are

that John M. Shively, who was the owner of a donation land claim embracing much of the present site of Astoria, and bounded on the north by the Columbia River, laid out and platted a part thereof, and also the adjacent tide lands and a portion of the Columbia River in front thereof, into city blocks, separated from each other by streets, some running at right angles to, and others nearly parallel with, the high-water mark. Blocks 112 and 120, as so laid out, are partly above and partly below the line of ordinary high water. Block 121 is in front of block 112, and east of block 120, and block 133 is in front of block 120; and both of these latter blocks are partly above and partly below the line of ordinary low water. Block 132 is in front of block 121, and east of block 133, and blocks 132 and 133 extend out into the Columbia River below the line of low water. On February 18, 1860, Shively sold and conveyed to James Welch, plaintiff's father, blocks 112, 120, and 133, and on August 12, 1869, sold and conveyed to James Taylor blocks 121 and 132. Prior to 1873, Welch sold and conveyed lots 5 and 6 in block 120 to Ingalls, who sold and conveyed the same to Taylor. On September 5, 1873, as a result of these conveyances, Welch owned the upland in block 112, and Taylor had a deed to, and claimed to own, blocks 121 and 132 in front thereof, and Taylor owned the uplands in lots 5 and 6 in block 120, and Welch had a deed to and claimed to own block 133 in front of the same. While the title was in this condition, the common council of the City of Astoria, upon the application of Welch and Taylor, and by virtue of Section 4228, Hill's Ann. Laws, passed an ordinance on September 5, 1873, authorizing them to extend a wharf, which they proposed to build north of blocks 132 and 133, out into the river to a line of frontage of twenty-

two feet of water at mean low tide, and to extend such wharf up and down the river in front of both of such blocks.

After the passage of this ordinance, and on the seventeenth day of September, 1873, Taylor and Welch sold, assigned, and transferred all their rights, privileges, and franchises thereunder, including "all right and title to build and erect wharves and warehouses under said ordinances," to the Astoria Farmers' Company, on condition that it would comply with the terms of the ordinance; and, on the fifteenth of August, Welch and wife conveyed to such company all block 133, except seventy feet of the south side thereof, together with all easements in front and north of such block to the ship channel, on condition that the Farmers' Company would, prior to the first day of January, 1874, build a wharf as provided for in the ordinance referred to, one-half to be in front of the premises granted. By a deed of the same date, Taylor and wife conveyed to the Farmers' Company all block 132, except seventy feet of the south side thereof, together with all easements in front and north of such block to the ship channel, conditioned in every respect as the deed of Welch and wife referred to. Acting upon these conveyances from Welch and Taylor, and the assignment to it of the rights acquired by them under such ordinance, the Farmers' Company erected a wharf out in the river about three hundred feet distant from the north line of blocks 132 and 133, and connected the same by a roadway with what purports to be a street north of such blocks, designated as "Water Street," no part of such wharf or roadway being upon either tide or upland. This wharf and all the property acquired from Welch and Taylor was prior to 1883 conveyed to the defendant. After the wharf had been constructed, and

34 OR.—29.

on the tenth of August, 1876, the state conveyed to Taylor, the owner of lots 5 and 6 in block 120, all the tide land in front of such lots ; and on the fifteenth day of August, 1883, after the wharf heretofore referred to had been burned, Taylor and wife conveyed such tide land to the plaintiff, who immediately instituted this suit for the purpose of enjoining the rebuilding of such wharf and a roadway or approach thereto in front of lots 5 and 6 from the street north of block 133.    Upon these facts, the court held that the defendant company had the right, as against the plaintiff, to reconstruct the wharf, but that it had no right to build the approach referred to, and entered a decree accordingly.    From this decree both parties appeal.

MODIFIED.

For the plaintiff there was a brief and an oral argument by *Mr. Clifton R. Thomson*.

For defendant there was a brief and an oral argument by *Mr. W. W. Cotton*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1.  It will be observed from the statement of facts that the questions involved in this case are identical with those presented to and determined by the court in the case of *McCann v. Or. Ry. & Nav. Co.*, 13 Or. 455, (11 Pac. 236).    That was a suit to enjoin the reconstruction of such wharf in front of lot 2 in block 112, brought by a vendee of Welch and of the state to the tide land in front of such lot, conveyed after Welch and Taylor had sold all their rights under the ordinance, and water blocks 132 and 133 to the Farmers' Company.    At the time of the passage of such ordinance, Welch was the owner of

block 112, the upland block, while Taylor claimed to own blocks 121 and 132 in front of it; and, at the same time, Taylor owned lots 5 and 6 in block 120, while Welch claimed to own block 133 in front thereof. In other words, Welch owned the upland in front of which Taylor undertook to transfer to the Farmers' Company a water block, and he and Welch the right to construct a wharf, while Taylor owned the upland in front of which Welch undertook to convey to such company a water block, and he and Taylor a similar wharfage right. In the *McCann Case* the court held that Welch had, at the passage of the ordinance, by virtue of his ownership of block 112, the right under the laws of the state to build a wharf in front thereof; and, having transferred such right to the Farmers' Company, upon its agreement to build it, and the company having complied therewith, and built the wharf at great expense, neither he nor his subsequent grantee could thereafter interfere with it or prevent its reconstruction. After stating his individual views upon the tide land question, and noting the fact that his associates did not agree with him, Mr. Justice THAYER, speaking for the court, says: "But, waiving that view of the question, and conceding that the state is, as some of the authorities have said, the owner in fee of the lands referred to, and can grant them, with the incidental rights of the shore or bank owners, to any private person the state government may please to favor, and still I do not see how the appellant can be entitled to the relief claimed under the provisions of said chapter LXIII of the laws of the state. Welch had been vested with the right to construct the wharf, and had transferred it to the Astoria Farmers' Company before he conveyed lot 2 to the appellant. It was a right which the state had, under the law, already granted, so far as it could be empowered to grant such rights; and it

certainly had no authority to reinvest itself of it, and grant it to the appellant. Its power in that respect had been expended, and the appellant accepted the deed to the so-called tide land in that condition of affairs ; and I do not see how it can consistently be claimed that it operated to devest the Farmers' Company of their right in the premises, and invest them in the appellant. * * * No court in any civilized community, it seems to me, would uphold so flagrant an injustice. I think the appellant, when he accepted the deed from Welch to said lot No. 2, took it subject to the acts of the latter affecting the riparian rights pertaining to it ; that the deed from Welch to the Astoria Farmers' Company, of August 15, 1873, and the assignment by Welch and Taylor of September 17, 1873, to the said company, of all their rights under the wharf ordinance of the city, which imposed the obligation upon said company to build the wharf, was a relinquishment of any rights Welch may have had to the land upon which it was located arising out of his ownership of said block No. 112, or of any land owned by him at that time which abutted upon said tide water, and estopped him and his grantees thereof from ever objecting to the maintenance of said wharf. Any different conclusion of the matter would, in my judgment, operate as a hardship and fraud, which a court of equity will never sanction. The decree appealed from should therefore be affirmed."

Within the doctrine of that case, Taylor, who was the owner of lots 5 and 6, in block 120, at the time of the passage of the ordinance granting to himself and Welch the right to construct the wharf in front thereof, and at the time of the transfer of the rights acquired by them under such ordinance, and of blocks 132 and 133, to the Farmers' Company, had the right to construct such wharf ; and having transferred it to the company before

he acquired the tide land in front of lots 5 and 6, neither he nor his subsequent grantee can now deny or question the right of the Farmers' Company and its successors in interest to reconstruct or maintain such wharf. The plaintiff, realizing the force and effect of the decision in the *McCann Case*, challenges its soundness, and insists that it should be overruled; but it was the unanimous decision of our predecessors, on exactly the same state of facts, and is manifestly equitable and just. We are, therefore, unwilling to disturb it, or even at this time to re-examine the reasons upon which it is grounded.

2. The remaining question is whether the court erred in enjoining the defendant from constructing the roadway or approach to its dock in front of the tide land owned by the plaintiff. As already stated, this roadway is not upon or across any of the tide land, but is wholly below the line of low water. It cannot, therefore, interfere with any of the plaintiff's rights, unless it is an obstruction to a wharfage right; and, as we have already seen; he has no wharfage rights in front of lots 5 and 6. These lots are one hundred feet in width, and the defendant's dock extends for several hundred feet up and down the river on each side of an extension of the side lines of such lots. The plaintiff, therefore, cannot have access to the channel of the river, because of the dock or wharf, and so cannot complain of any use made by the defendant of the bed of the river below the line of ordinary low water, because it cannot interfere with any of his rights. It follows that the decree of the court below should be reversed in so far as it restrains the defendant from constructing the contemplated roadway or approach to its wharf, and in all other respects affirmed.

MODIFIED.