Argued 10 December; decided 23 December, 1901.

## MONTGOMERY v. SHAVER.

[66 Pac. 923.]

NAVIGABLE WATERS—WHARF RIGHTS.

1. Riparian owners on navigable streams are entitled to wharf from their upland out to navigable water, or to the channel, within side lines drawn at right angles with the thread of the stream and intersecting the boundary lines of the land at ordinary high-water mark, and not elsewhere; and the right is not affected at all by the establishment of wharf lines.

MUNICIPAL CONTROL OF WHARF RIGHTS.

2. Section 4228 of Hill's Ann. Laws, providing that the corporate authorities of a town wherein it is proposed to erect a wharf or wharves may prescribe the mode and extent to which the franchise may be exercised beyond the line of low-water mark, confers power to regulate the manner of building wharves, and to establish wharf lines, but does not empower a municipality to authorize a riparian owner to extend his wharf in front of the lands of an adjoining riparian owner.

LIMITATIONS—ADVERSE POSSESSION.

3. Where the complaint in an injunction suit to restrain defendant from occupying certain premises is amended to include a larger tract, the suit will be deemed to have been commenced on the day of the amendment, in determining whether defendant had acquird title by adverse possession to the portion of the tract not included in the original complaint.

NATURE OF WHARF PRIVILEGE.

4. A wharf right is an appurtenance to the upland with which it is connected; it is not a right inseparably attached, however, but may be severed from the upland.

EFFECT OF ADVERSE HOLDING OF WHARF RIGHT.

5. A wharf right may be lost to the upland owner by prescription, so that a riparian owner erecting and using a wharf for ten years, which encroaches on the water front of an adjacent riparian owner, acquires title by adverse possession of the water front so occupied and to the waters extending outward to the ship channel in front of the water front so occupied.

EVIDENCE OF ADVERSE POSSESSION OF WHARF RIGHT.

6. A riparian owner claiming title by adverse possession of the water front of an adjoining riparian owner had driven piling for the purpose of constructing a wharf, but it was never completed. He afterwards authorized the use of a portion of the space as a ferry slip, and it was so used for about six months, and boats were occasionally tied up to the piling. *Held,* not to show an exclusive use sufficient to give title by adverse possession.

REQUIREMENT OF CLAIM BY PRESCRIPTION.

7. A person claiming title by prescription to the water front appurtenant to the land of a riparian owner must show an ouster and an actual possession under a claim of right for the statutory period, and it is immaterial whether the riparian owner was in actual possession of the water front during such time, since possession follows the true title.

From Multnomah:   ALFRED F. SEARS, JR., Judge.

This is an injunction suit originally commenced by James B. Montgomery against Geo. W. Shaver and others. Mary Phelps Montgomery, as executrix, was substituted as plaintiff, and a decree entered in her favor, from which defendants Shaver and Ryan appeal.                           MODIFIED.

For appellants there was a brief and an oral argument by *Mr. Julius C. Moreland.*

For respondent there was a brief over the names of *Stott & Stout,* and *Mitchell & Tanner,* with an oral argument by *Messrs. Geo. C. Stout,* and *Albert H. Tanner.*

MR. JUSTICE WOLVERTON delivered the opinion.

The north line of the Irving claim, which is also the dividing line between the former cities of East Portland and Albina, intersects the Willamette River obliquely, forming an acute angle therewith on the south. Plaintiff's testator was, at the institution of this suit, the owner of the land lying immediately north of this line and extending to the river, and the defendants of that adjoining it on the south. In 1881, Shaver constructed a wharf westerly from the northwest corner of defendants' upland, extending to the wharf line, as then established, and in 1882 attempted to extend it northward along said wharf line to the north line of the Irving claim if extended into the river. While engaged in driving the piling as a substructure therefor, the plaintiff's testator, on November 28 of that year, began a suit to enjoin the further prosecution of the work, claiming that the space to be occupied by the proposed extension was in front of his property, and that the right of wharfage, as to such space, belonged to him. The complaint described the realty of which he was the owner as beginning at the easterly corner of river lot 19 in the Town of Albina; thence easterly along the southerly line of River Street four hundred and twenty-five feet, to the boundary line

of East Portland; thence westerly along said boundary line to ordinary low-water mark on the bank of the Willamette River; thence northwesterly meandering the river, etc., to the place of the beginning; and alleged that by the laws of Oregon the plaintiff was the owner and entitled to the overflowed lands lying between the above-described lands where they are bounded on the westerly side by low-water mark and the navigable channel of said river, and that as riparian proprietor he is entitled to have access to said river from every portion of said lands abutting thereon. After the issues had been formulated, a trial was had, resulting in a decree enjoining defendants from proceeding further with the construction of said wharf, which decree was, on August 14, 1883, set aside and vacated, and no further proceedings were had until March 6, 1893, when plaintiff filed, by leave of the court, an amended complaint. In this latter pleading plaintiff describes his realty by metes and bounds in all respects as before, except that it extends westerly to ordinary high-water instead of low-water mark on the bank of the river, and claiming the wharfage right in front thereof. In the meantime nothing had been done towards the further construction of the wharf. The decree upon the second trial having awarded in the main the relief demanded by the complaint, the defendants Shaver and Ryan appeal.

1. The plaintiff claims that by reason of her ownership of the uplands she is entitled to the right or privilege of constructing a wharf or wharves in front thereof, and that, as between her and the defendants, their respective rights must be determined by a line commencing on the bank of the river at ordinary high-water mark at the point where the dividing line of plaintiff's and defendants' upland intersects the same, and extending thence to the thread of the stream at right angles therewith. The right to wharf out to the navigable water of a stream is given by statute to any owner of land within the corporate limits of any town or city bordering thereon: Hill's Ann. Laws, § 4227. It must be conceded that wharfage or wharfing privileges are valueless unless they extend to naviga-

ble water or the ships channel. It often happens that the contour or configuration of a stream is such that, if the dividing line of upland owners bordering on the margin or line of high-water mark is extended by right lines the owner on one side thereof will be deprived of access to the ships channel; so that, in order to accord to each shore owner a ratable and equitable proportion of the navigable stream, the rule has been firmly established, as being the most apt and appropriate for the purpose, that the bounds are to be governed by lines drawn at right angles from the thread of the stream to the shore termini. The fact that the proper authorities have established a wharf line in front does not alter the case. The thread of the stream is the unalterable base from which lines drawn at right angles to the shore termini will determine the area subject to the exercise of the wharfing privilege: 4 Am. & Eng. Ency. Law (2 ed.), 828; *Bay City Gaslight Co.* v. *Industrial Works,* 28 Mich. 182; *Clark* v. *Campau,* 19 Mich. 325; *Jones* v. *Johnston,* 59 U. S. (18 How.) 150; *Emerson* v. *Taylor,* 9 Me. 42 (23 Am. Dec. 531); *Knight* v. *Wilder,* 2 Cush. 199 (48 Am. Dec. 660). There are possibly exceptions to the rule, but this is clearly not a case falling within any that have been called to our attention.

It is suggested that the shore owner of uplands takes to low-water instead of ordinary high-water mark, but the rule to the contrary has been so firmly established in this jurisdiction that it is unnecessary to treat the question further than to cite the cases in which it was involved: *Parker* v. *Taylor,* 7 Or. 435; *Wilson* v. *Welch,* 12 Or. 353 (7 Pac. 341); *Johnson* v. *Knott,* 13 Or. 308 (10 Pac. 418); *Bowlby* v. *Shively,* 22 Or. 410 (30 Pac. 154); *Astoria Exchange Co.* v. *Shively,* 27 Or. 104 (39 Pac. 398, 40 Pac. 92); *Shively* v. *Bowlby,* 152 U. S. 1 (14 Sup. Ct. 548).

2. The next zealous contention is that defendants were authorized by competent authority to construct their wharves over the disputed territory. This is based upon the provisions of Hill's Ann. Laws, § 4228, and Ordinance 359, adopted by the Common Council of the City of East Portland February

5, 1883. The section alluded to provides that the corporate authorities of the town wherein it is proposed to construct a wharf or wharves shall have power to regulate the privilege or franchise granted by the preceding section, and that such authorities may prescribe the mode and extent to which the franchise may be exercised beyond the line of low-water mark, so that such wharf or wharves shall not be constructed any further into the stream than may be necessary and convenient, and so as not to unnecessarily interfere with navigation. Section 4227 is said to be a permissive statute, which alludes to certain things that may be done, but does not vest any right until exercised. It constitutes a license revocable at the pleasure of the legislature until acted upon: *Bowlby* v. *Shively,* 22 Or. 410 (30 Pac. 154); *Lewis* v. *City of Portland,* 25 Or. 133, 136 (35 Pac. 256, 22 L. R. A. 736, 42 Am. St. Rep. 772). The statute is, however, declarative of the right or privilege which existed at common law, the exercise of which might be regulated by statute; but so long as it was not prohibited it existed as a private right derived from the passive or implied license by the public: Gould, Waters, § 176. So that the enactment of Section 4227 gave positive authority where it previously existed passively and by implication. Now, the purpose of Section 4228 was to regulate the building of wharves, not to extend the right or license as recognized and granted by the previous section, in front of other lands than that of the owner desiring to exercise his privilege. The regulation pertains to the manner of erecting structures, and the extent to which they shall be built out into the channel of the stream, so as not to obstruct or impede navigation; and it is upon authority of said section that wharf lines are established, beyond which no wharfing privileges may be exercised: *Lewis* v. *City of Portland,* 25 Or. 133 (22 L. R. A. 736, 42 Am. St. Rep. 772, 35 Pac. 256). In this view the common council of East Portland was without authority to authorize defendants to construct any wharf or dock beyond the space in front of their own upland, measured by lines drawn at right angles with the thread of the stream to their shore termini.

At this juncture a question of fact is presented pertaining to the location upon the ground of the point where the dividing line between the upland of plaintiff and defendants intersects the ordinary high-water mark on the bank of the river, because upon its definite location depends the extent of their relative primary wharfing rights or privileges. The point of ordinary high water is defined by Mr. Justice THAYER in *Johnson* v. *Knott*, 13 Or. 308 (10 Pac. 418) as that "to which the water usually rises in an ordinary season of high water." Upon this question the circuit court found that "The said high-water mark on the boundary line between the said Town of Albina, Oregon, and the City of East Portland, is at a point where the northern boundary line of the Shaver dock extended easterly in a direct line, intersects said boundary line between the said Town of Albina, Oregon, and said City of East Portland, being at the point marked 'X. F.' on the map introduced in evidence in this cause, marked 'Defendants Ex. 1.'" This finding is supported by the testimony adduced, and probably accords as nearly with the fact of the exact location as it is possible to determine. Witnesses whose familiarity with the premises would enable them to know have so designated the point, and it appears to conform very nearly, if not exactly, to the original claim location of the northwest corner of the Irving donation, which ordinarily would be sufficient for its satisfactory establishment. But what lends peculiar weight to the finding is that the learned trial judge visited the *locus in quo* by consent of the parties, and located the point upon the ground. Under such circumstances the case to the contrary should be a clear one to warrant this court in locating it elsewhere, and manifestly such a case is not presented by the record.

3. The last question relates to the statute of limitations, the defendants claiming that they have been in the adverse possession, use, and enjoyment of the right or privilege of wharfing out to navigable water, as it pertains to the disputed territory, for more than ten years prior to the filing of the amended complaint, and hence that plaintiff is precluded from prosecuting a suit to enjoin their further occupancy and use.

The original complaint, by reason of the manner in which it was drafted, did not comprise within its purview the whole of the disputed territory, although it was probably so intended, but only so much as was opposite plaintiff's land with the northern boundary of the Irving claim extended to low-water mark. The amended complaint, filed March 6, 1893, brought the whole into litigation for the first time, so that as to the territory latterly brought into the controversy the suit must be deemed as having been commenced as of that date: *Buntin* v. *Chicago R. I. & P. Co.* (C. C.) 41 Fed. 744; *Alabama Gt. So. R. Co.* v. *Smith,* 81 Ala. 229 (1 South. 723; *Miller* v. *McIntyre,* 31 U. S. (6 Pet.) 61; *Sicard* v. *Davis,* 31 U. S. (6 Pet.) 124; *Holmes* v. *Trout,* 32 U. S. (7 Pet.) 171; *Bigham* v. *Talbot,* 63 Tex. 271; *Gill* v. *Young,* 88 N. C. 58.

4. The right or privilege of constructing a wharf or wharves, which the statute accords, and that which existed before the statute, is a right appurtenant to the upland. It is not personal to the shore owner, so that it must be exercised by him alone or not at all, but is the subject of grant, and may be severed from the upland. See *Parker* v. *West Coast Pack. Co.* 17 Or. 510 (21 Pac. 822, 5 L. R. A. 61); *Andrus* v. *Knott,* 12 Or. 501 (8 Pac. 763); *Parker* v. *Taylor,* 7 Or. 435; *Bowlby* v. *Shively,* 22 Or. 410; *Lewis* v. *City of Portland,* 25 Or. 133, 136 (35 Pac. 256, 22 L. R. A. 736, 42 Am. St. Rep. 772); *Welch* v. *Oregon Ry. & Nav. Co.* 34 Or. 447 (56 Pac. 417).

5. Such being its nature, it may be lost to the upland owner by prescription, so that, if the defendants have been in the adverse possession and enjoyment of the franchise, as it respects the disputed territory or any portion thereof, for more than ten years, plaintiff is barred of her remedy to the extent of such adverse holding: *Sargent* v. *Ballard,* 9 Pick. 251; *Gray* v. *Bartlett,* 20 Pick. 186 (32 Am. Dec. 208). Shaver's wharf was constructed in 1881, so that there is no question but that defendants had been in the exclusive and adverse possession thereof, and the space occupied thereby, for the statutory period, prior to the filing of the amended complaint. When first erected, the structure extended to the wharf line as

then established. Subsequently the line was changed, and established further out in the stream. The northerly end of the wharf extends a few feet upon the disputed territory, and as to the extension the circuit court decreed that the statute of limitations barred the plaintiff's suit, limiting the bar to the space actually covered by the structure. But adverse possession of the water front for wharfage purposes carries the occupancy to deep water or the ships channel, for of what use is the wharf unless water craft can approach and use it? So that defendant's adverse holding by reason of the structure extends to deep water at right angles with the thread of the stream.

6. As it relates to the remaining space, the defendants drove some piling therein, extending out to the old wharf line, early in 1882, but have done nothing further in the way of completing the structure to the present time. Part of the space was once used as a ferry slip, upon the authority of the defendants, for about six months, and boats have occasionally tied up to the piling, but otherwise there has been no occupancy or user by the defendants. This comes far short of use to the exclusion of plaintiff or adverse possession.

7. It is said that plaintiff has not been in actual possession in the meanwhile, but possession follows the true title unless held adversely thereto, and defendants must show an ouster, and exclusive and actual possession thereof under claim of right, until the statute has run its course and has given a new title.

In view of these conclusions the decree of the court below will be modified, and the defendants enjoined from the use or occupancy of any part of the disputed territory lying north of a line commencing at the point where the north line of their wharf, as now constructed, if extended, intersects the north line of the Irving claim, and running thence westerly to the northwest corner of said wharf, and thence westerly to the thread of the stream at right angles therewith. The costs and disbursements will be awarded to the plaintiff in the court below and to the defendants in this court.          MODIFIED.