Argued October 15, decided November 24, 1908.

# COQUILLE MILL & MERCANTILE CO. *v.* JOHNSON.

[98 Pac. 132.]

NAVIGABLE WATERS—LANDS UNDER WATER—TITLE TO BED OF STREAM.

1. The title to the bed of a navigable stream is *prima facie* in the State.

NAVIGABLE WATERS—RIPARIAN RIGHTS—BOOMS.

2. Riparian owners upon navigable streams may construct booms, piers, etc., in the shoal water in front of their land, if they do not obstruct navigation, so long as such use of the stream is not regulated or prohibited by the State, such right being derived from an implied license by the public, and being dependent upon title to the bank, and not upon any title to the bed of the stream.

NAVIGABLE WATERS—RIPARIAN RIGHTS—BOOMS—NATURE OF RIGHT.

3. The right of a riparian owner to construct booms, etc., adjacent to his land is a mere franchise, distinguishable from the appropriation and occupation of the bed itself, but it is not personal to the owner, and is the subject of grant.

LICENSES—REAL PROPERTY—ESTOPPEL OF LICENSEE.

4. A boom in a navigable stream having been constructed under a license from the riparian owner, the licensee and his privies were thereafter estopped from denying the owner's riparian rights or those of any one claiming under him.

LANDLORD AND TENANT— LANDLORD'S TITLE — ESTOPPEL OF TENANT— ADVERSE POSSESSION OF TENANT.

5. To start limitations in favor of a tenant claiming adversely to his landlord, the tenant must openly and explicitly disclaim any holding under the landlord, and unreservedly assert title in himself, with the landlord's express or implied knowledge of his claim of ownership.

ADVERSE POSSESSION—HOSTILE CHARACTER—EXTENT OF ADVERSE CLAIM.

6. Possession alone is not sufficient to give title by adverse possession against the owner, since it is as consistent with a present interest under a limited estate as with the fee, but the question depends on the quality and extent of the interest claimed, and the law will presume an interest in a party in possession only to the extent of his claim.

ADVERSE POSSESSION—HOSTILE CHARACTER—POSSESSION OF LICENSEE.

7. Plaintiff's predecessor constructed a boom in a navigable stream under a license from the riparian owner, which required the licensee to pay taxes on the land, which he did for a number of years, and each transfer of the right recited that it was the boom privilege of the riparian owner, and, while plaintiff and its predecessors claimed to own the boom, they made no express claim to the riparian owner's rights. *Held*, that plaintiff's possession was not adverse to those claiming under the riparian owner, its claim of ownership of the boom being consistent with possession under the license.

NAVIGABLE WATERS—RIPARIAN RIGHTS—BOOMS—ADVERSE POSSESSION— BED OF STREAM—POSSESSION AGAINST STATE.

8. A riparian owner maintaining a boom adjacent to the shore, or one doing so under a license from such owner, is presumed to do so under his riparian rights, and not as claiming to own the bed, and until he has explicitly and openly disclaimed such holding, and has unqualifiedly asserted ownership in the bed, and brought notice of his claim to the State, limitations

would not begin to run against the State, even if it could be divested of title to the bed of a navigable stream by adverse possession.

EJECTMENT — PROPERTY SUBJECT OF ACTION—INCORPOREAL HEREDITA-
MENT—RIPARIAN RIGHTS.

9. The right to the continued enjoyment of a franchise in the waters of a navigable stream, granted by a riparian owner, being an incorporeal hereditament, ejectment will not lie to recover possession thereof.

From Coos: JAMES W. HAMILTON, Judge.

This is an action in ejectment by the Coquille Mill & Mercantile Co. against Alfred Johnson and the Johnson Lumber Co. From a judgment rendered upon a verdict in favor of the defendants, plaintiff appeals.

Statement by MR. COMMISSIONER SLATER.

This is an action in ejectment to recover possession of certain described real property, being, as stated in the complaint, "inclosed by a boom for catching and holding logs, and timber, and lying and being in the navigable water of the Coquille River in front of lot 2 in Section 7, and lots 6 and 7 in Section 18, all in township 28, south of range 12, west of Willamette Meridian, and known as the 'Gilman Boom.' "

The answer denies plaintiff's alleged ownership of the fee and right to the possession thereof, and avers that defendants are the owners, and of what their title consists, and that they are entitled to the possession. Upon a trial being had, a verdict was rendered in favor of defendants, upon which judgment was entered, and from which plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Walter Sinclair* and *Mr. E. D. Sperry,* with an oral argument by *Mr. Sinclair.*

For respondent there was a brief over the names of *Mr. A. J. Sherwood* and *Mr. John S. Coke,* with an oral argument by *Mr. Sherwood.*

Opinion by MR. COMMISSIONER SLATER.

At the close of the testimony, plaintiff moved for a directed verdict in his favor, which was denied by the

court, and this is assigned as the principal error upon which a reversal of the judgment is sought. Plaintiff was not able to show any paper title in itself, but relied upon title by adverse possession, not only as against defendants, but as against the State.

1. But there are two reasons why it cannot maintain its position in this action (1) Because it is estopped from denying that defendants' grantors ever had any right to construct and maintain a boom abutting upon their property, or to grant such right to another; and (2) because whatever right, if any, it has therein, or to the possession thereof, is not such a title or right that could be the basis of an action in ejectment. The premises, the possession of which is sought to be recovered, are, as stated in the complaint, the bed of the Coquille River, a navigable stream, the title to which is *prima facie* in the State: *Bowlby* v. *Shively,* 22 Or. 410 (30 Pac. 154); *Hume* v. *Rogue River Packing Co.* 51 Or. 237 (92 Pac. 1065). Plaintiff deraigns such title as it has from one James A. Lyons, who, it claims, built the boom in 1889, and that ever since then, and to at least 1903, he and his successors in interest occupied, used, and maintained an open, notorious, and exclusive possession thereof under a claim of ownership, so that the fee-simple title to the bed of the stream became divested out of the State and lodged in Lyons. But the record shows that, at and prior to the construction of the boom, John Gilman was the owner, by mesne conveyance from Wm. P. Bushnell, of 143.20 acres of land, which was patented to him by the general government on December 20, 1869. This land abutted upon the Coquille River, adjacent to and opposite the location of the boom, and it is admitted in the pleadings that the river at that point is a navigable stream, and by virtue of the act of October 21, 1876, of the legislative assembly of this State (Sess. Laws 1876, p. 69) Gilman's title was extended to low-water mark.

On October 10, 1889, Gilman executed, in favor of A. J. Smith, an instrument termed a "lease," which purports to grant to the latter "the right and privilege of putting in and maintaining a boom for holding logs and timber along the line of the premises of the said Gilman where the same adjoins the Coquille River, in Coos County, State of Oregon, being along the river front, and is to be built and constructed so as to do as little injury to the bank as practicable and to the approval of Albert Gilman." As a consideration therefor, Smith agreed to pay the tax thereafter levied and assessed on the land of the said Gilman, which he then owned, and which adjoins said Coquille River where said privilege of putting in a boom was granted. It was further stipulated in the agreement that, in case Smith, his heirs, executors, administrators, or assigns, shall fail to pay such tax and allow the same to become delinquent, then the agreement and the privilege of maintaining the boom shall cease and determine. In the fall of 1889 Smith and Lyons constructed a boom in the river adjacent to and along the shore of Gilman's land, by driving piling into the bed of the river, about 120 to 130 feet from the bank and parallel therewith, in sets or dolphins of three piles, at considerable distances apart. These dolphins were joined by logs or boom sticks fastened to them by means of cleats. The upper and lower ends of the boom were joined to the bank or shore by logs attached to piling driven in the shore at about low-water mark, the bank forming one side of the inclosure. It is shown that Smith and Lyons used this boom for the purposes for which it was designed until July 19, 1894, when Smith assigned to Lyons this instrument, termed in the assignment an "agreement" or "lease," as well as all his interest thereunder. Lyons and his successors in interest continued in the use and possession of the boom, claiming to own it, until in the year 1902, when William Jess, who had

succeeded to all the rights of Gilman in the abutting lands, conveyed a one half interest therein to defendant Johnson, who thereafter took from Jess a lease of the remaining one half interest in the boom and claiming that, by failure of Smith and his assigns to pay the taxes upon the land, the lease to Smith was subject to annulment, Johnson took possession of the boom in 1903, and thereafter excluded plaintiff from the occupation and use thereof. Hence this action to recover from Johnson the possession of the boom.

2. The first question to be determined is, What right, if any, has a riparian owner to construct, in navigable water adjacent to his property, a boom to store logs, and is such right assignable? Plaintiff claims that the riparian owner has no such right, and relies to some extent upon a statement made by us in the opinion in *Hume* v. *Rogue River Packing Co.* 51 Or. 237 (92 Pac. 1065), recently decided, to the effect that the owner of upland bordering upon navigable water has no title in the adjoining lands below high-water mark, nor any rights in or over the adjoining waters as appurtenant thereto. But that statement was confined to the rights of an upland owner, as distinguished from a tideland owner or one who owns to low-water mark, which was Gilman's situation. But "riparian owners upon navigable fresh rivers and lakes may construct, in the shoal water in front of their land, wharves, piers, landings, and booms, in aid of and not obstructing navigation. This is a riparian right, being dependent upon title to the bank, and not upon title to the bed of the river. Its exercise may be regulated or prohibited by the State; but, so long as not prohibited, it is a private right, derived from a passive or implied license by the public. As it does not depend upon title to the soil under water, it is equally valid in those states in which the river beds are held to be public property and in those states in which they are

held to belong to the riparian proprietors *usque ad filum aquae*": 2 Gould, Waters (2 ed.) § 179; *Montgomery* v. *Shaver*, 40 Or. 244 (66 Pac. 923) ; *Stevens Point Boom Co.* v. *Reilly*, 44 Wis. 295; *River Co.* v. *Patterson*, 98 U. S. 403 (25 L. Ed. 206).

3. Such right, however, is a mere franchise (2 Gould, § 179), and is distinguished from appropriation and occupation of the soil under the water: *Deidrich* v. *N. W. N. Ry. Co.* 42 Wis. 248 (24 Am. Rep. 399). It is not personal to the shore owner, so that it must be exercised by him alone, or not at all, but is the subject of grant, and may be severed from the soil: *Montgomery* v. *Shaver*, 40 Or. 244 (66 Pac. 923).

4. No statute has ever been enacted by this State, at least none has been brought to our attention, regulating or prohibiting the construction and operation of booms; and hence, on October 10, 1889, Gilman, the shore owner, possessed this right, which he might lawfully grant to another. Smith and Lyons having constructed the boom under a license from Gilman, they and their privies are thereafter estopped from denying his right, or that of any one claiming under him.

5. And when a tenancy is once shown to exist, in order to set the statute of limitations running in favor of the tenant desiring to avail himself of it, to acquire title by adverse possession, he must openly and explicity disclaim and disavow any and all holding under his former landlord; and, further, he must unreservedly and steadily assert that he himself is the owner of the true title, all of which must be brought home to the knowledge of the rightful owner: *Nessley* v. *Ladd*, 29 Or. 354 (45 Pac. 904). Neither of these necessary things has plaintiff attempted to show. On the contrary, the record discloses that for a number of years Lyons paid Gilman's taxes in accordance with the original agreement, and in the chain of its title each transfer is of the Gilman boom

privilege, a distinct recognition of the original right under which the boom was built.

6. Nor has there been any showing made by plaintiff that, while it and its predecessors in interest were in possession of the boom, any claim was made, by any of them, of an ownership adverse either to Gilman and his grantees, respecting a right to maintain the boom, or to the State in respect to the soil under the water. It is true it has shown possession of the boom, "but it is not possession alone, but the possession accompanied with the claim of the fee, that gives this effect, by construction of law, to the acts of the party. Possession, *per se,* evidences no more than the mere act of present occupation by right, for the law will not presume a wrong; and that possession is just as consistent with a present interest, under a lease for years or for life, as in fee. From the very nature of the case, therefore, it must depend upon the collateral circumstances what is the quality and extent of the interest claimed by the party; and to that extent, and that only, will the presumption of law go in his favor": *Rickord* v. *Williams,* 20 U. S. 59-105 (5 L. Ed. 398).

7. Now the proof that plaintiff and its predecessors in interest, while using and occupying this boom, claimed to own it is not inconsistent with the fact that it was built and operated under a license from the shore owner, for it was not a boom already constructed and ready for use that Gilman leased to Smith, but a license to build a boom at a particular place, adjacent and abutting upon his shore. Smith and Lyons did in fact own the boom, but maintained it by license of the owner of the abutting property. Plaintiff has indeed shown possession of the boom and a claim of ownership thereof, but nothing independent of such possession which is qualified by their own acts and declarations.

8. Nor is such claim adverse to the ownership by the State of the fee to the bed of the stream. As we have shown, the inception of this claim was under a license by the shore owner, whose right is subordinate to the paramount ownership of the fee by the State. The two rights exist together, not in antagonism to one another, but one is superior to the other; and a shore owner, or one by his license occupying and using a portion of a navigable stream adjacent to the shore for booming logs, must be presumed to do so under his riparian right, and not as one claiming to be the owner of the bed of the stream. Until it is shown, then, that one owning and operating a boom for holding and storing logs in front of the property of a shore owner has explicitly and openly disclaimed any and all holding under the presumed riparian right, and has unequivocally asserted ownership of the bed of the stream, and brought some notice to the State of that claim, the statute could not begin to run against it so as to divest it of its title, if indeed in any event it could be divested of the title to the bed of a navigable stream by adverse possession, which has recently been doubted by this court: *Trullinger* v. *Howe,* 53 Or. —— (97 Pac. 548).

9. This conclusion reduces the matter attempted to be litigated to the right to the continued enjoyment of a franchise, granted by an abutting owner to another, to operate a boom in a navigable stream adjacent to his property, which right, as a thing distinguished from appropriation and occupation of the soil under the water, is an incorporeal hereditament, for the possession of which an action in ejectment will not lie: 15 Cyc. 16; *Parker* v. *West Coast Packing Co.* 17 Or. 510 (21 Pac. 822: 5 L. R. A. 61).

This conclusion renders it unnecessary that we should consider any of the other errors assigned, and calls for an affirmation of the judgment.    Affirmed.