RICHARD W. DREW AND MARION DREW, PLAINTIFFS AND
RESPONDENTS, *v.* LULU BURGGRAF, J. M. WILLIAMS
AND PHYLLIS C. WILLIAMS, DEFENDANTS AND APPEL-
LANTS.

No. 10444
Submitted December 3, 1962. Decided January 28, 1963.
378 P.2d 232.

H. A. Bolinger, Jr. (argued orally), Bozeman, for appel-
lants.

Keister & Bennett, (Lyman H. Bennett argued orally), Boze-
man, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the eighteenth judicial district, in and for the County of Gallatin, which judgment quieted title in the plaintiffs to a claimed ditch easement by the defendants across 160 acres of land located approximately eight miles north of West Yellowstone, Montana.

The action was commenced on July 12, 1956. The pleadings disclose that the defendant Lulu Burggraf, who was the widow of Nic Burggraf, was alleged to be the sole owner of the claimed ditch easement subject to a written contract to sell to the defendants J. M. Williams and Phyllis C. Williams. Lulu Burggraf based her alleged ownership on adverse user of the ditch for more than ten years prior to the commencement of the action and further contended that plaintiffs' action was barred by section 93-2504, R.C.M.1947. This section so far as pertinent here, reads as follows:

"No action for the recovery of real property, or for the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question within ten years before the commencement of the action. * * *"

In 1953, section 1, Ch. 224, amended this statute by substituting five years for ten years. However, as the defendants allege adverse possession from and after June 1, 1946, the applicable law was the section above-quoted prior to its amendment.

This cause was tried to the Honorable W. W. Lessley, District Judge, sitting without a jury, on June 29, 1961, who found for the plaintiff. This appeal ensued.

Appellants specify two specifications of error. The first being that the court erred in making the following finding of fact and conclusion of law designated finding of fact number one which is the basis of the other finding of fact and conclusion of law, to-wit:

"That the defendants claim an easement across the said

lands for a certain ditch constructed in the year 1946 by Nic Burggraf and Lulu Burggraf; that said ditch was constructed pursuant to written permission and license contained in a letter from one James Pickens, written to Nic Burggraf on or about the first day of June, 1946, and *that said permission and license was terminated by the conveyance of said real estate from James Pickens to the plaintiffs above-named, during the month of August, 1955, and that not until the conveyance above mentioned was delivered, did the use of said ditch by the defendants, or any of them, become adverse and that, accordingly, the claim of the defendants is without any right whatever, and the defendants have not, nor has any of them, any right, title, estate or interest in, or lien or encumbrance upon said lands, or any part thereof."* Emphasis supplied.

The second specification of error was the failure of the trial court to make a finding of fact and conclusion of law proposed by the defendant which is the exact opposite of that adopted by the court.

There is contained in the record four letters, the first dated May 22, 1946, which letter was addressed to the then owner of the land, Mr. James Pickens, 1711 25th Avenue, Seattle, Washington.

"Dear Mr. Pickens:

"Some years ago there was an irrigation ditch in use across your land. I would like to run water out of Grayling Creek over onto land south of the highway which I purchased. I presume this will be all right with you. This will put running water through your land, and it should be a benefit to you. I thought, however, I should mention it to you. I talked to Pete Hansen about it and he thought it would be all right.

"Would you please write me confirming my letter as I want to do this ditch work right away. The water right on the land I purchased is in good standing and I would like to put it to use.

"Thank you very kindly, I remain.

"Yours very truly
"Nic Burggraf
"Contractor"

Then on June 2, 1946, Mr. Pickens, the owner, wrote Mr. Burggraf:

"In regard to your letter of May 22 you have *our permission* to do what ever work is necessary to resume the flow through the irrigation ditch. (Emphasis supplied.)

"Sincerely,
"James Pickens."

The third letter is dated March 6, 1948.

"Mr. James Pickens

"1711 12th Street

"Seattle, Washington

"Dear Mr. Pickens,

"Referring to your piece of property on Grayling Creek. Last year I asked you for *permission* to put a ditch across your land, which you granted and I appreciated the favor very much. It works very good.

"Now it looks like I would wish to build a fence on the west and south side of your place to a point where it connects with my own fence, if you will permit me to do so. I have the Pete Hansen place leased for five years and I also own the Ford, McKnight and Stuart land and I do not like to have my cattle run over on Marie Rodman's camp. She raises Hell when that happens. I would therefore like to build a drift fence on your line. It would not damage your property in any way that I can see. If you will give me your *permission* to build this fence as outlined I would very greatly appreciate the favor.

"When you come over to West Yellowstone sometime I would like to have an opportunity to get acquainted with you. Thanking you for an early reply, I remain

"Very truly yours,
"Nic Burggraf"

The fourth and last letter is dated March 28, 1948.
"Dear Mr. Burggraf:

"Received your letter about the fence on my place on Grayling Creek and in reply I am perfectly willing that you put this fence up to keep your cattle from straying.

"There is only one thing that I want to make clear and that is that if I ever get a buyer for the place I wouldn't want it to implicate a sale in any way.

"We will no doubt come to W.Y. for a visit and look forward to meeting you with a great pleasure.

"Very truly yours,
"Jim Pickens
"1607 Franklin Ave.
"Seattle 2, Washington"

In Havre Irrigation Co. v. Majerus, 132 Mont. 410, 414, 415, 318 P.2d 1076, this court set forth certain basic elements necessary to prove prescriptive use.

"It has been repeatedly established in this state that one claiming water rights, by virtue of adverse possession, has the burden of proving every element of his claim." Galiger v. McNulty, 80 Mont. 339, 260 P. 401; Boehler v. Boyer, 72 Mont. 472, 234 P. 1086; Smith v. Duff, 39 Mont. 374, 102 P. 981, 133 Am.St.Rep. 582."

Attention is directed to the case of Kelly v. Grainey, 113 Mont. 520, 529, 129 P.2d 619, 623, wherein this court said:

" '* * * It is impossible to base title by prescription or limitation upon such possession. Waddell v. School District, 74 Mont. 91, 238 P. 884; Ferguson v. Standley, 89 Mont. 489, 300 P. 245; 2 C.J.S. 624, Adverse Possession, § 80.

"While a permissive possession may subsequently become hostile (2 C.J.S. 639, Adverse Possession, § 87) to make it so there must be a repudiation of the permissive possession and of the recognition of ownership implicit therein, and the repudiation must be brought home to the owner by actual notice, or at least by acts of hostility so manifest and notorious that actual

notice must be presumed. Coquille Mill & Mercantile Co. v. Johnson, 52 Or. 547, 98 P. 132 [134], 132 Am.St.Rep. 716. * * *."

This court in Price v. Western Life Ins. Co., 115 Mont. 509, 146 P.2d 165, in quoting from the case of Lindokken v. Paulson, 224 Wis. 470, 272 N.W. 453, 110 A.L.R. 910, stated:

" 'The law is very rigid with the respect to the fact that a use permissive in the beginning can be changed into one which is hostile and adverse only by the most unequivocal conduct on the part of the user. The rule is that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner.' "

This court then further observed:

" '* * * Following this citation from that case, the writer of that opinion used language that may very appropriately be used to present the correct situation in the case at bar. The court said: 'The difficulty with the plaintiff's case here is that there is no act from which hostility to the interests or rights of the defendant as the owner of the servient estate can be inferred.' "

In the case of White v. Kamps, 119 Mont. 102, 114, 171 P.2d 343, this court, quoting from Northwest Cities Gas Co. v. Western Fuel Co., 13 Wash.2d 75, 123 P.2d 771, said: " 'A user which is permissive in its inception cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner of the servient estate.' See also State ex rel. Shorett v. Blue Ridge Club, 22 Wash.2d 487, 156 P.2d 667."

We have heretofore quoted verbatim the interchange of letters between Pickens, predecessor in interest of the plaintiff, and the deceased husband of the defendant, Burggraf in the years 1946 and 1948.

This exchange of letters very clearly shows, as found by the trial court, that the building and use of the ditch was by permissive use only.

There is neither a suggestion, statement or scintilla of evidence that would indicate hostile or adverse use for the required statutory period or at all, and thus plaintiffs' action could not have been barred by the provisions of section 93-2504, R.C.M.1947.

Predicated on the application of the rules of law previously quoted we hold that the findings of the trial court are justified by the evidence, it will not be disturbed. Such findings support the conclusions of law. The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN CONWAY HARRISON and ADAIR, concur.