[Filed March 31, 1886.]

# A. H. JOHNSON *v.* A. J. KNOTT AND LEVI KNOTT.

NAVIGABLE WATERS—CONSTITUTIONAL LAW.—The shores of navigable waters, and the soil under them, were not granted by the constitution to the United States, but were reserved to the states respectively.

SAME—HIGH-WATER MARK—MEANDER LINE.—The point to which the water usually rises in an ordinary season of high water is the true meander line, and forms the boundary of the title of the United States.

TIDE AND OVERFLOWED LANDS—CONSTRUCTION OF STATUTES.—The act of October 26, 1874 (to provide for the sale of tide and overflowed lands on the sea-shore and coast), refers only to such tide and overflowed lands as were the subject of sale and could be rendered susceptible of cultivation by reclamation.

STATUTE OF LIMITATIONS.—By the amendment adopted in 1878, the limitation for actions for the recovery of real property was reduced from twenty to ten years, except that where the cause of action had accrued and ten years had expired, or would expire within one year from the approval of the amendment, an action could be brought within one year thereafter.

EVIDENCE—OPINION.—Upon a contention as to whether the premises in controversy lay within the boundaries of the Stevens patent, or between them and the river, a question asked a witness, "whether such tract was in the patent to Stevens, or not," was properly excluded, as calling for an opinion instead of a fact.

PRESCRIPTION—EASEMENT—PAYMENT OF TAXES.—A grant of the right will be presumed from the adverse use of a liberty, privilege, or advantage in the land of another for a period equal to the statute of limitations; and payment of taxes on the land by the owner is not inconsistent with the acquisition of such easement.

*George W. Yocum* and *W. Scott Beebe,* for Appellant.

*C. B. Bellinger,* for Respondents.

THAYER, J. The appellant commenced an action against the respondents in the court below to recover the possession of certain real property, described as fractional lots 3 and 4, in block 2, of East Portland, alleged to be wrongfully withheld from him by the respondents, and to recover $500 damages for such withholding. The respondents denied appellant's ownership of the prem-

ises, and·interposed a plea of the statute of limitations. The action was tried by jury, who returned a verdict for the respondents, and upon which the judgment .appealed from was entered.

It is conceded by all parties that James B. Stephens' settled upon a donation land claim upon the right bank of the Willamette River, under the donation law, approved September 27, 1850, and by virtue of such settlement, and residence, and cultivation, in accordance with the requirements of said law, obtained a patent to such claim, which was duly issued to him January 24, 1866; that the claim extends on the west to the meander line of the Willamette River, which is a navigable stream; that a part of the town of East Portland was laid off upon said claim in blocks and lots, and in which said block 2, or a part thereof, is included, which block is situated at the north-west corner of said claim, between K and L streets, in said town. In 1864, said Stephens, after his four years' residence and cultivation, sold off lot 5 of said block; and the respondents, through mesne conveyance from him, obtained title to it in 1874. In 1871, said Stephens executed a deed of conveyance to the appellant, which purported to convey to him fractional lots 1, 2, 3, and 4, and whole lots 6, 7, and 8, in said block 2, and under which he claims ownership to the property in controversy. In 1852 the legislature of the then territory of Oregon granted to the said James B. Stephens an exclusive right of a public ferry across the Willamette River, which the respondents have obtained title to from said Stephens and his grantee thereof, and which is located on the east side of said river, at the foot of said L Street. The respondents' lot 5 lies along said last-mentioned street, on the north side thereof, and contiguous thereto, and fronts Water Street upon the east. Said fractional lot 4 is immediately west of lot 5, and fronts the river,

and said fractional lot 3 adjoins it on the north.  The respondents, and those under whom they claim, have driven piling north of the foot of L Street across the front of said lots 3 and 4, in order to sheer their ferry-boat into the slip at the foot of L Street as it approaches the same from the west side, which appears to be the wrongful withholding of possession complained of.

The real question in the case was whether said fractional lots were above or below the said meander line. If above, they were within the description contained in the patent; but if below it, they were not, though Stephens may have been the owner of the frontage as riparian proprietor until he sold off said lot 5.   It is well settled that the United States never owned the land between high and low water mark.   It was decided a great many years ago by the Supreme Court of the United States that the shores of navigable waters, and the soil under them, were not granted by the constitution to the United States, but were reserved to the states respectively.  (*Pollard's Lessee* v. *Hagan,* 3 How. 219.)  That decision has ever since been adhered to; and in *Railroad Co.* v. *Schurmeir,* 7 Wall. 272, the same rule was declared to apply to fresh-water streams that were navigable.  .The language used in the latter case is that the title of the United States to lands bordering on navigable streams stops at the stream. The main inquiry at the trial should have been to ascertain the line of high-water mark in front of said block 2. A jury is an excellent institution to determine such a question.   The only matter to be decided in such a case is the location of the line indicating high-water mark; and that involves a discrimination between the upland and the bank proper of the stream.   The banks of a river serve, of course, to hold its waters within its bed, and the point to which the water usually rises, in an ordinary season of high water, I would regard as high-water mark,

and that it constituted the true meander line.   This line is easily observed by an examination of the banks of a river long after the water subsides, and an intelligent jury, when permitted to view the locality, will have no difficulty in detecting it.

The appellant was obliged to show upon the trial, in the first instance, that the premises in controversy were above the line referred to.   He could not trace his title back to the United States without showing that fact, and before he could prove by a witness that the premises were included in the description contained in the patent, he should have shown that the witness knew where the line of high-water mark was in the immediate locality. The jury having passed upon the question, their verdict must be regarded as conclusive; and it can only be impeached by showing from the record that the jury were misled by the admission of improper evidence, erroneous instructions, or that proper evidence upon the subject was excluded by the court.

The jury were instructed, substantially, that in case they found that the premises in question were included in the description contained in the said patent to Stephens, it passed to Stephens under the patent, provided it was not below high-water mark of the Willamette River. This instruction was clearly correct, and involved the main point in the case.   The instruction that the bank of a river was that part of the land between ordinary high and ordinary low water mark, and belonged to the state, was as favorable to the appellant as could properly have been required.   The instruction that there was no testimony to warrant the jury in finding that there was any such land where the premises in controversy were situated, as would pass by the act of the legislature referred to by the court, was doubtless correct.   At least, there is nothing in the bill of exceptions showing to the

contrary. The act referred to was the act of October 26, 1874. It granted to the riparian proprietors upon the Willamette River all right and title of the state in the tide and overflowed lands in front of them. This evidently referred to such tide and overflowed lands as were the subject of sale, and could be rendered susceptible of cultivation by reclamation. It is not reasonable to suppose that the legislature intended to grant away a part of the bed of said river. It could no more do that than it could grant the entire river. The decision of this court in *Andrus* v. *Knott*, 12 Or. 501, is conclusive of that point. The instructions given by the court as to the character of riparian rights, and that the appellant could not, by virtue of such rights alone, recover the possession of land in that character of action, I think, was correct. Admitting that the respondents in driving the piling infringed upon the rights of the appellant, it was no disseisin unless the latter was in some degree owner of the soil. It appears to me that the questions of ownership of the land in controversy, as to the rule of gaining and losing land by accretions and abrasions, and upon the subject of the statute of limitations, were properly and fairly submitted to the jury.

The appellant asked the court to give the following instructions:

1. "If you find from the evidence that the plaintiff was the owner of the premises on the twenty-seventh day of November, 1874, and that on that day, or after that day, some portions of lots 3 and 4, in controversy in this action, was high ground, above ordinary high-water mark; and you further find that some parts of said lots now lie between ordinary high and ordinary low water mark on the Willamette River; and you further find that the plaintiff has not sold or conveyed away his title to said property—then, and in that case, you will find for the plaintiff."

2. "If you find from the evidence that a part of lots 3 and 4, in controversy in this action, at the east end of said lots back from the river, was high ground, above ordinary high-water mark, on November 27, 1874, and afterwards, while plaintiff was still the owner of said lots, then, and in that case, Johnson, the plaintiff, became the owner in fee of all the tide or overflowed lands lying in front of said lots, and which was located between ordinary high water and ordinary low water, on the Willamette River; and unless you find from the evidence that defendants have gained an adverse title by long possession, as hereafter explained, or that plaintiff has lost or conveyed away his title—the plaintiff is still the owner of the property in controversy, and you will so find by your verdict."

3. "Before the defendants can defeat the title of plaintiff to the property in controversy on the ground of adverse possession, they must prove that the defendants, or some one of them, their ancestors, grantors, and predecessors, have been in the open, continuous, uninterrupted, and exclusive possession of the premises for a period of twenty years preceding the commencement of this action, and that such possession must have been in hostility and adverse to the title of the plaintiff."

These the court refused. The first one is very general, and if given would necessarily have confused the jury. It would have referred to the jury the duty of finding an ultimate fact in the case, instead of finding facts from which it might be deduced. The jury had no right to find that the appellant was at any time the owner of the premises, except as a result of other findings. The appellant's counsel could, with equal consistency, and with better logic, have asked the court to instruct the jury that if they found that the appellant was the owner of the premises they would find for the appellant. The

court had told the jury the circumstances under which they could find the ownership of the premises, and the counsel had no right to ask it to stride over them. The counsel was not entitled to the instruction as framed.

The second one is not a correct proposition of law. If a part of lots 3 and 4 had been above high-water mark, such part would have been conveyed to the appellant, as the court substantially had instructed; but it would not have followed that he became the owner in fee of all the tide and overflowed lands lying in front of said lots, had there been any such lands, nor that he was the owner of the balance of the property in controversy. He would have owned just what portion of said lots was above high-water mark, and the riparian rights attached thereto.

Nor is the third of said instructions asked correct. The counsel's view of the amendment of the statute of limitations adopted in 1878 is not a proper construction of it. The old period of twenty years' limitations in such cases was superseded, and it is now ten years. The amendment was intended to apply to all cases mentioned in section 4 of the act, except that where the cause of action had accrued, and ten years expired, or would expire within one year from the approval of it, an action could be brought within one year from the date of the approval. The proviso in section 4 of the act as amended merely gave the year in which to bring an action in the cases mentioned. In all other cases the period expired in ten years.

The appellant's counsel complains because the court excluded a map of East Portland which was offered in evidence. The map was of no authority, and would not have benefited the appellant's case if it had been admitted in evidence, though I cannot see why it should have been objected to or excluded.

The refusal to permit Chapman to answer the ques-

tion as to whether block 2 was contained in the patent to Stephens or not, I think was proper. The question called for a conclusion. The witness could, if he had known, have been allowed to state where the line of high-water mark was with reference to the block; could have been inquired of as to whether the block, or any part of it, was above the said line; but to ask him whether or not it was contained in the patent was calling for an opinion instead of a fact.

The testimony offered as to the value of the use and occupation of the premises by the defendant was improper. They had evidently no rental value, and under the circumstances of the case could not have injured the appellant.

The ruling of the court upon the testimony offered in rebuttal, as it was termed, was clearly within the discretion of the court. The evidence should have been given in the first instance; it was a part of the appellant's case to show that the premises were above the meander line. It was necessary to prove that, in order to show that Stephens owned them at the time he executed the deed to the appellant.

The answer of the witness Sweeney that Knott had told him that there would be a bill introduced in the legislature that would cover that property was entirely immaterial. It proved nothing whatever, and the court's striking it out did not affect the case.

The question to the appellant, when on the stand as a witness, as to who had paid the taxes on the property all the time, could have had no bearing on the case if he had returned a favorable answer. The adverse possession set up by the respondents must necessarily have consisted of a public, open, and notorious occupation of the premises as used by them under a claim of right; and the appellant's having paid the taxes would not have disproved

it. I do not understand that the occupation extended over the entire premises in dispute, but that it consisted in maintaining the piling before referred to, and was insisted upon more in the nature of right to exercise the privilege than a claim of title to the land. Under that view, the general ownership of the land might be in the appellant, and the respondents entitled only to an easement, in which case the payment of the taxes by the former would not be inconsistent with the alleged right of the latter. One person may have a liberty, privilege, or advantage in the land of another for a special purpose arising out of grant or prescription, and a grant would be presumed from the adverse use of such right for a period equal to the statute of limitations. From the evidence shown by the bill of exceptions, I would infer that it was the use by the respondents of the premises, in the particular way mentioned, for the period of time claimed, upon which their plea of the statute of limitations was founded. In that case, it would be immaterial whether the appellant paid the taxes or not, as the ownership of the premises subject to such right would be in him. If there has been any error committed in the case, it must have been done by the jury, and their decision of the questions of fact involved in the issues is not the subject of review.

The judgment appealed from should be affirmed.