Argued 11 November; decided 8 December, 1902.

**TRINWITH *v.* SMITH.**

[70 Pac. 816.]

BOUNDARIES—MONUMENTS—LOST CORNERS.

1. In a suit to establish the boundary line between the S. E. ¼ of the S. E. ¼ and the N. E. ¼ of the S. E. ¼ of section 29 of a certain township, the evidence shows that the southeast corner of the section is a lost corner, and that the field notes locating it are inaccurate, so that the disputed corner cannot be located therefrom, and hence the commissioners appointed to establish the boundary line properly located the disputed line from the original government corners found in place at the northeast of section 33, northeast and northwest of section 29, southeast and southwest of section 32, and northwest of section 31, in such township.

BOUNDARIES*—CONCLUSIVENESS OF GOVERNMENT SURVEYS.

2. The rule in ascertaining lost boundaries being to trace the lines of the original survey, the corners and monuments then established are conclusive on all persons holding under such surveys, and cannot be moved.

*NOTE.—In seeking to re-establish lost or confused boundaries it is important to trace as nearly as possible the lines of the original surveys as actually run, and for this purpose lines and monuments usually control courses and distances: *Lewis* v. *Lewis,* 4 Or. 177; *Goodman* v. *Myrick,* 5. Or. 65 (cited with approval in *Weiss* v. *Oregon I. & Steel Co.* 13 Or. 496, 497); *Raymond* v. *Coffey,* 5 Or. 132, 135; *Anderson* v. *McCormick,* 18 Or. 301

RULES FOR ESTABLISHING LOST CORNERS.

3. The rules for establishing lost interior corners are reviewed and discussed, and it is *held* that the special commissioners reached a correct conclusion as to the disputed line.

From Marion: REUBEN P. BOISE, Judge.

This is a suit by H. Trinwith against Don A. Smith to settle a disputed boundary. The complaint sets forth that the plaintiff is now the owner and in possession of the S. E. ¼ of the S. E. ¼ of section 29, township 9 south, range 4 east, and that the defendant is the owner and in possession of the N. E. ¼ of the S. E. ¼ of said section; that there exists a controversy between the parties respecting the boundary line between their lands; that the northeast corner of plaintiff's land is situated about 300 feet north of the Minto Trail; that the boundary line in dispute runs thence west to the center of the S. E. ¼ of said section 29, and that plaintiff cannot give a more definite description thereof for the reason that the monuments have been destroyed and obliterated. The prayer is for a decree locating the boundary line, and that commissioners be appointed for that purpose to go upon the ground and establish it by proper marks and monuments. The answer joins issue with the complaint, except it is admitted that the lands of the respective parties lie adjacent; and it is further set up that the alleged disputed boundary has been permanently fixed and settled by a survey of the respective tracts, made by the county surveyor of Marion County at the mutual request of the then owners. This latter is denied by the reply. A trial was had under the issues thus formulated, and the court, not being satisfied as to the initial point marking the disputed boundary, granted the prayer of plaintiff, and by its decree appointed three commissioners "to locate and establish the line between the lands

(22 Pac. 1062) ; *Van Dusen* v. *Shively,* 22 Or. 64 (29 Pac. ,76) ; *Kanne* v. *Otty,* 25 Or. 531 (36 Pac. 537) ; *Robinson* v. *Laurer,* 27 Or. 315 (40 Pac. 1012).

The rule being to follow the footsteps of the surveyor, the courses and distances control when it appears that they, rather than monuments, correspond with the actual lines : *King* v. *Brigham,* 19 Or. 560 (25 Pac. 150) ; *Hale* v. *Cottle,* 21 Or. 580 (28 Pac. 901) ; *Albert* v. *Salem,* 39 Or. 466 (65 Pac. 1068) ; *Baker County* v. *Benson,* 40 Or. 207 (66 Pac. 815) ; *Trotter* v. *Stayton,* 41 Or. 117 (68 Pac. 3).—REPORTER.

of the said plaintiff and defendant \* \* by an actual survey, and that a survey be made for the purpose of ascertaining the various corners of section 29," etc., "and, if the same cannot be ascertained, then by ascertaining such other section corners or monuments as may be described in the field notes of the United States survey from which can be located the corner of said section and the line separating the lands of plaintiff and defendant, and, when so ascertained by them, that they erect permanent and suitable monuments," etc. Their report having been set aside, other commissioners were appointed, who also made a survey and report, accompanied by a plat of their work upon the ground. To this latter report a motion was interposed, based upon numerous affidavits, to set it aside, which also was denied, and a decree entered confirming the report and establishing the boundary line as thereby indicated, from which plaintiff appeals.     AFFIRMED.

For appellant there was a brief over the names of *Weatherford & Wyatt* and *George G. Bingham*, with an oral argument by *Mr. James K. Weatherford*.

For respondent there was a brief over the names of *W. H.* and *Webster Holmes*, with an oral argument by *Mr. W. H. Holmes*.

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1. The first call of the government field notes running north from the corner of sections 28, 29, 32, and 33 is 8 chains, to the foot of hill east and west; the second, 9 chains, to left bank of Santiam River; and it is the contention of plaintiff that this latter is constituted a monument in the government survey, forever fixed and established, and it cannot be changed or altered by the establishment of corners under the laws of the state. With this as the major premise, it is argued that it is but a simple matter of retracing a course south the distance of 9 chains to establish the initial or section corner above designated, which being established the disputed corner could be

easily determined and settled. Some evidence was introduced with a view of fixing the location of the disputed boundary on the ground, and more with a purpose of establishing the original section corner in place, and also the quarter section corner north. T. Z. Drais, who purchased the land now belonging to plaintiff from the Oregon & California Railroad Co., testifies that according to the field notes the northeast corner of plaintiff's land was located some five or six rods north of the Corvallis & Eastern Railroad; that Mr. Fisher surveyed the land for him, and drove a stake five or six rods above the trail, which he said was the corner; and that he did not find any corner, or any evidence of one, between the township line and the northeast corner of section 29, a distance of two miles, more or less. Mr. Sullivan testifies that the plaintiff bought from Daley, who was the immediate successor of Drais; that Daley told him the line in dispute was up by the Minto Trail according to the field notes; and that he claimed that to be the line. A. B. Woodin testifies that eleven years ago he saw the one half mile government corner between the southeast and northeast corner of section 29; that it was indicated by a stone bearing the United States survey marks upon it, namely, "¼" on diagonal line, and the figures "42;" that he found it nearly under the center of a large fir log, and that it must have been located 100 rods north of the Minto Trail; that he has been up since, and the stone is not there now; that there is at the present time a chicken house built near the spot, and a fence nearly on the original line, and that, in his judgment, the original corner is to the left or west of the fence 8 or 10 feet, and 20 or 30 feet north of the house, which would be the location, as near as he could give it, by permanent natural objects; that he found the northeast corner of section 29, saw it a number of times, and saw the southeast corner once; that it was situated at the foot of a permanent ledge of rock, close up; that it was marked, but that he could not tell what letters or figures were upon it; that he broke away the dirt and shell rock to see it more plainly, and found that it was the corner; that he located it some 6 feet north of where they have made

a mark at the top of the ledge. Mat Cullivan testifies that he was with Fisher at one time when he ran a survey to ascertain the northeast corner of plaintiff's tract; that, in his effort to find the southeast corner of section 29, he began at the quarter-section corner between 28 and 33, surveyed west until he came opposite this particular rock, and then went west to the quarter corner between 29 and 32, and ran east, making an offset south to avoid some impassable territory, and came to the top of a rock, where he said the government corner should be; that witness does not know whether Fisher established it as a corner or not, but that he made a cross upon the rock; that he chained from the bottom of the rock, and set a corner on the other side of the 40-acre piece, which was probably 100 feet or so north of the Minto Trail; that Fisher had previously measured from the northeast corner of section 29 south to a rock supposed to be the quarter-section corner, and that he was guided by the field notes and marks previously left upon natural objects by Culver; that he saw the rock with the cross on it a year ago this summer, but it is not known whether it is there now or not.

The plat accompanying the majority report of the commissioners first appointed shows that they took as the initial point for their survey a stone situated on the east line of sections 29 and 32, 9 chains south of the North Fork of the Santiam River, the same being 71.16 chains south of the northeast corner of section 29, and from that established the northeast corner of plaintiff's tract near the Corvallis & Eastern Railroad track. From the records of the county surveyor's office in Linn County it appears that on August 7, 1890, Fisher re-established the quarter-section corner between 29 and 32, where he planted a stone marked "C S," and that on May 6, 1891, he re-established the corner to sections 29, 30, 31, and 32, and the quarter-section corner between sections 30 and 31, by stones planted and similarly marked; and there is evidence on the ground that the quarter-section corner between sections 28 and 33 has been so re-established by him. The defendant introduced testimony tending to show that the quar-

ter-section corner on the east line of section 29 was located near a wagon road, 500 to 700 feet above or north of the railroad; and that Culver probably made the first survey affecting the matter in controversy, whereby he laid out and platted the town site of Niagara, which was intended to be laid entirely upon the land of the defendant. Several surveys have been made with a view to a definite location of the line in dispute, the most thorough being the one submitted with the report of the commissioners last appointed. This report shows that the commissioners found the original government corners at the northeast of section 33, northeast and northwest of section 29, southeast and southwest of section 32, and northwest of section 31 in place; that from the northeast corner of section 29 they ran south 152.62 chains on random line intersecting township line, and thence north 52 minutes west on true line 76.31 chains to a point equidistant between the northeast corner of section 29 and southeast corner of 32, and set corner of sections 28, 29, 32, and 33. After subdividing the east line of section 29, and surveying the north line, they ran from the northwest corner of section 29 south 157.67 chains on random line to intersection of township line, thence north 58 minutes west on true line 78.83½ chains to a point equidistant from the corners of sections 19, 20, 29, and 30, and 5, 6, 31, and 32, and re-established the corner of sections 29, 30, 31 and 32. Then, commencing at the southwest corner of section 30, they ran a line north 89 degrees and 27 minutes east 75.13 chains to the re-established corner of sections 29, 30, 31, and 32; thence north 88 degrees and .08 minutes east 79.17 chains to corner of sections 28, 29, 32, and 33; thence north 81 degrees and 27 minutes east 80.72 chains to northeast corner of section 33. By dividing the exterior lines of section 29 thus ascertained, they re-established the quarter-section posts, and by means thereof subdivided the section, and ascertained the boundaries of the lands of plaintiff and defendant, thus fixing the location of the disputed line. They have also projected upon the plat a line extending from the southwest corner of 29 through the quarter-section corners between sections 29 and

32 and 28 and 33 as re-established by Fisher, and thence to the northeast corner of section 33. The southwest corner of section 29, as re-established by Fisher, is shown to be located to the west of the west line of 29, as established by the commissioners, some 6 or 7 chains; Fisher's re-established quarter-section corner to the east bearing the same relation to that re-established by the commissioners; and the projected line through section 29 is from 10½ to 11 chains north of the south line of said section, as relocated by the commissioners. By Gobalet's survey and plat it appears that a point 9 chains south of the left bank of the river is 6 chains north of the commissioners' re-established southeast corner of section 29, and 4½ south of the projected line through Fisher's re-established corners; thus showing that the southeast corner, according to the government field notes as ascertained from the river bank, does not agree with either the Fisher monuments or the commissioners' survey.

From the testimony adduced it is very apparent that the location on the ground of the southeast corner of section 29 is lost, if it were ever established by the United States government survey, and the same may be said of the quarter-section corner between that and the northeast corner of the section. No one pretends to locate the southeast corner in place. Mr. Woodin thinks it was within six feet of the cross made on the rock by Fisher. He is unable, however, to recall the marking contained upon the stone monument, but relates that he saw the marks, and supposed it was a government monument, and hence that it was intended to denote the southeast corner of section 29; but the stone, whatever it may have been intended for, is not to be found now. Another peculiar circumstance is that Fisher did not attempt to re-establish this as a government corner while he was re-establishing section and quarter corners at the west and the quarter corner at the east. There appears no reason why he should not have re-established this, if he found any evidence or marks on the ground indicating such to be the location by the government survey. So it was properly concluded by the trial court that this was a lost

corner. And the same may be predicated of the quarter-section corner to the north. They could not be definitely located on the ground. Woodin thinks that the latter was about 100 rods north of the Minto Trail, near a chicken house and a fence. Witnesses for defense assert that it is near the wagon road, sometimes referred to as the "skid road," or was removed in the construction of that road; but none attempt to locate its exact locality. By measurement the Minto Trail is 5.58 chains north of the Corvallis & Eastern Railroad, and the wagon road about 7 chains north of the trail; so that there is a wide difference in opinion as to where the quarter-section corner was located. These corners being lost, they can furnish no data from which to establish the locality of the division line in question, and it was necessary that they be re-established as a basis to work from.

If reliance could be placed upon the field notes, the southeast corner of section 29 could have been easily ascertained by measurement upon the ground; but they are manifestly inaccurate. Running north they read 8 chains, to the foot of hill east and west, 9 chains to left bank of Santiam River, 11.50 chains to flag on right bank, 15 chains to foot of hill east and west, 16.30 chains to Minto Pass Trail east and west, 40 chains, set stone, etc., for quarter corner 80 chains, set stone, etc., for corner of sections 20, 21, 28, and 29. Now, by actual measurement the distance from a point 9 chains south to the left bank of the river north to the government monument at the northeast corner of section 29 is only 71.16 chains. This is a physical demonstration, and it absolutely discredits the field notes as respects the east line of section 29. Being thus discredited, who can say with certainty that they are accurate to the south of the river, and that the whole discrepancy lies to the north? If Fisher's re-established southwest corner be correct, a like inaccuracy occurs. By measurement it is but 16 chains to the left bank of the river, whereas the field notes give it as 25.59 chains, thus making the section line short by more than 10 chains. So it seems that Fisher did not rely wholly upon the field notes in making his surveys. There is some reason for

believing, however, that he correctly re-established the south-west corner of the section. The field notes describe it as marked by a dogwood post four inches square by four feet, from which a fir six inches in diameter bears north 52 degrees east 98 links. The surveyor's record in Linn County shows that the re-establishment was at the "original corner stake of dogwood (quoting from the record), which had rotted off; but I found the stub or stake where it had rotted off, and set the stone at it, from which a fir 48 in. in diam. bears N. 49 deg. E. 98 links distant. This is the same tree described in the United States field notes as being 6 in. in diam., it being marked on the bark, and partially obliterated."

There is also other evidence in corroboration of this. Stewart says he knew where the stake stood, and saw it; that it is now upstairs in Henry Hurlman's house, taken there after it rotted down, but he describes it as an alder. Barzee, who homesteaded the S. ½ of the S. ½ of section 30, states that Fisher could not find the corner; that witness showed him where it was; that the tree was in the right direction, and at the right distance from the stake; but that he told him no man in the State of Oregon could find that corner from the field notes. Continuing, witness says that the line is all wrong in there; that Mazler first set the corner off, but when Fisher came in and made his survey he had to set his line fence back. Notwithstanding this testimony, the commissioners have treated the southwest corner of section 29 as a lost corner, and have re-established it from other sources. Gobalet would not recognize it as accurately re-established, while the majority of the commission first appointed did so regard it. Cline regarded it as inaccurate. Barr made a survey, but in doing so assumed that Fisher's re-established quarter-section corners between sections 28 and 33 and 29 and 32 were correctly located, and ran a line from each to the intersections of the north and south section line, and from the point of contact north to northeast corner of section 29, if we understand the method of his survey, in the absence of the plat used by him for explanation while on the stand, which is not now to be

found in the record. He found the east line of section 29 to be "very short,"—using his language,—"between 66 and 67 chains." Dividing this into four parts, he located the north-east corner of the S. E. ¼ of the S. E. ¼ north of the Minto Trail about two chains. Riggs made a survey in much the same manner, only that he went further west to Fisher's re-established section corner at the southwest corner of section 29 with the same result. Fisher's early survey seemed to have corresponded with these two; in other words, Barr and Riggs evidently retraced the Fisher survey upon the ground, and it thus appears that Fisher could not have used the rock marked by a cross as the initial or southeast corner of section 29 for running his line north. If he had, the northeast corner of plaintiff's land would have been fixed at the Corvallis & East-ern Railroad track, as is demonstrated by the plat made and returned by the majority of the first commissioners. We are very well satisfied that these two surveys, namely, the Barr and Riggs surveys, and consequently the Fisher survey, as it relates to the line in dispute, were made upon an erroneous basis. They treated the southeast corner of section 29 as lost, as all other surveyors have done, and sought to re-establish it on a direct line between Fisher's re-established corners, with-out regard to the field notes of the east line of section 29, or a proportional measurement between the southeast corner of sec-tion 32 and the northeast of 29,—two government monuments well established and identified on the ground. Nor does it make much, if any, difference, in our view of the case, whether the southwest corner of section 29 was correctly re-established by Fisher or by the commissioners, the location of the south-east, using either as a basis, must be practically the same.

2. The United States government surveys of public lands are undoubtedly conclusive upon all persons owning or hold-ing with reference thereto, and corners and monuments so established cannot be altered, whether properly placed or not, and must remain, when ascertained, the true corners or monu-ments by which to determine the boundaries: *Climer* v. *Wal-lace*, 28 Mo. 556 (75 Am. Dec. 135); *Randall* v. *Burk Tp.*,

4 S. D. 338 (57 N. W. 4). The rule also prevails that lines and monuments ascertained and known and actually located upon the ground will control over courses and distances: *King* v. *Brigham,* 19 Or. 560 (25 Pac. 150). This is, however, not an inflexible rule, and will yield, under some conditions, to courses and distances. Thus, if it appear from the face of the conveyance, in the light of the surrounding circumstances, that the corners and distances as given correctly describe the land intended to be conveyed, they will prevail: *Hale* v. *Cottle,* 21 Or. 580 (28 Pac. 901). And in any attempt to re-establish an original survey the purpose should be to follow in the "footsteps of the surveyor" as nearly as possible: *Van Dusen* v. *Shively,* 22 Or. 64 (29 Pac. 76).

3. The rule adopted by the general land office for the re-establishment of interior section corners is laid down as the same as that for the re-establishment of corners common to four townships, in which two conditions are to be recognized: (1) Where the position of the corner is made to depend upon two lines at right angles to each other, and (2) where the original corner has been made by measurements on one line only. In the first case the re-establishment is accomplished by running the line north and south of the missing corner connecting the nearest identified corners, and placing a temporary corner at the proportionate distances, and by running a line east and west setting a temporary corner in a similar manner. Then by running through the first temporary corner a line east (or west), and through the second north (or south), as the relative positions may suggest, and the intersection of the two lines thus projected will mark the position of the corner to be restored. This method has the sanction and approval of *Martz* v. *Williams,* 67 Ill. 306, and is the one suggested by the United States Surveyor General for Oregon for the settlement of this controversy. Where the second condition exists, the restoration should be effected by proportionate measurements on the single line between the nearest identified corners on opposite sides of the missing one. This is the method pursued by the latter commissioners, for the reason, as stated by them, "We

find that by the original field notes this corner was originally established on measurements of one line only.'' The case would seem to fall within the rule, and yet we are not entirely certain respecting it. However this may be, we are satisfied the commissioners' survey is as near equitable as can be made under the circumstances. If the rule under the first condition had been adopted and applied, it could not change the location of the southeast corner of section 29 north or south in the least, but it may have changed it somewhat either to the east or west. But there is no controversy here in the latter relation, as both plaintiff and defendant seem to concede the meridional location to have been properly adjusted. Nor would the location north or south have been affected, as we have before observed, if the re-established Fisher southwest corner of section 29 had been adopted as a basis for the survey. The southeast being lost, the proportional adjustment, which must be adopted in the premises in any event, would require it to be established at a point equidistant from the northeast corner of section 29 and southeast of 32, just where the commissioners' survey culminated. The general course of the south boundary of section 29, it is true, would be materially affected, but not the southeast corner of the section. The commissioners, however, are of the opinion, as we have seen, that Fisher's southwest corner was not accurately re-established, and, acting in conformity thereto, re-established it for themselves, and made it one of the bases for subdividing the section. There is much evidence in support of this position. They were upon the ground, and report that they found no evidence there of the original location; and such is the report and testimony of Gobalet and Cline, who were also upon the ground. The first settlers claim according to the Mazler survey, which located the line much to the south of that by Fisher, and there undoubtedly was a readjustment of the fencing, after the latter's survey, to suit the new conditions created. Furthermore, Fisher's re-established southwest corner is out of relation on the meridional line as well, some 6 or 7 chains, as shown by the plat. So that, considering all the surrounding conditions and

circumstances, we are impelled to the conclusion that the com-missioners' survey was properly made as it affects the parties to this controversy, and the trial court was, therefore, not in error in confirming it, and the decree will be affirmed.

AFFIRMED.