## ARMSTRONG v. PINCUS.*

(158 Pac. 662.)

**Appeal and Error—Review—Findings.**

1. On appeal from a judgment at law, tried without a jury, the
Supreme Court must determine whether there was any competent
evidence to support the findings.

**Navigable Waters — Waters and Watercourses — Land Below High-
water Mark—Nature of.**

2. Land below the high-water mark of a river or stream is part
of the bed of the stream or river.

**Boundaries—Surveys—Meander Lines.**

3. The stream or other body of water, and not the meander line
as actually run on the ground to measure a fractional section abutting
on such stream, is the boundary line of the land.

**Navigable Waters—Deeds—Construction.**

4. Plaintiff's intestate sold land abutting on a stream, under an
agreement providing that if, upon survey, there should be less than
271 acres, the purchase price should be rebated. Upon resurvey it
was found that since the land had been patented from the government
the land had eroded, so that the present ordinary high-water mark
was within the meander lines run by the government surveyor. *Held*,
that as the bank of the stream, and not the meander line, formed the
boundary, land which lay below the ordinary high-water mark was
properly excluded on resurvey, for the loss by erosion, just as any
gain by accretion, falls on the owner in possession.

[As to navigable streams as boundaries, see note in 27 **Am.
St. Rep.** 56.]

---

*As to effect of bounding grant on river or tide water, see compre-
hensive note in 42 **L. R. A.** 502.                    REPORTER.

Navigable Waters—Waters and Watercourses—Accretion—Right to.
  5. Where land abuts on a stream, the owner is entitled to any accretions formed.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action by George M. Armstrong, administrator of the estate of George Armstrong, deceased, against Julius Pincus, to recover a balance due for land sold to the latter by the plaintiff under a written contract.

The contract of sale was executed in writing on December 30, 1913.   The land in question was described in the contract as follows:

"The donation land claim of Abner Fickle and Susannah Fickle, his wife, being Lot No. 5149, and described as lot 4 of section 11, lots 3, 4, 6 and 8, and the southwest one-quarter ($\frac{1}{4}$) of the northwest one-quarter ($\frac{1}{4}$) of section fourteen (14), the south one-half ($\frac{1}{2}$) of the northeast one-quarter ($\frac{1}{4}$), the northwest one-quarter ($\frac{1}{4}$) of the southeast one-quarter ($\frac{1}{4}$), and lot nine (9) of section fifteen (15), in township ten (10) south, range four (4) west of the Willamette meridian, Oregon, containing 321.87 acres, excepting therefrom the following tract, to wit: [Here follows a description by metes and bounds] containing 50 acres, leaving 271.87 acres."

It was stated in paragraph V of the agreement that:

"Should, upon a survey of said property, there be less than 271.87 acres, then in that event the purchase price herein stated shall be rebated *pro tanto.*"

The purchase price was $13,589, or practically $50 an acre.   Upon a survey made there appeared to be 247.108 acres, for which, according to the terms of the contract, the defendant paid plaintiff.   He now contends that there were 262.731 acres, and sues for the difference at $50 an acre, amounting to $781.15.

The easterly boundary of the tract of land contracted to be sold has always been the Willamette River. This stream has gradually encroached upon the land until the ordinary high-water mark is now considerably farther west than formerly, and accordingly, upon a survey of the property, the acreage had decreased. It appears that the surveyor followed the original government survey, with the exception of the easterly boundary thereof, which borders on the Willamette River, from which survey he departed, and drew his measurement along the present line of ordinary high water. The defendant paid the plaintiff for the amount of land as surveyed.        AFFIRMED.

For appellant there was a brief over the name of *Messrs. Seitz & Clark,* with an oral argument by *Mr. Maurice W. Seitz.*

For respondent there was a brief over the name of *Messrs. Bronaugh & Bronaugh,* with an oral argument by *Mr. Earl C. Bronaugh.*

MR. JUSTICE BEAN delivered the opinion of the court.

The plaintiff objects to this survey, claiming that the surveyor had no warrant nor authority to depart from the easterly boundary as established by the United States government. He claims that, had the surveyor followed the lines so established, the tract would have contained 262.731 acres. The only question, therefore, to be decided on this appeal, is this: In the resurvey of the tract of land in question, was the surveyor warranted in departing from the original survey to the extent of following the present line of ordinary high water of the river, or should he have

taken the original line established by the United States government as the easterly boundary of the property?

1–5. It is claimed by counsel for plaintiff that in the resurvey of land the surveyor is bound to observe certain statutory regulations and established customs, and must follow in the footsteps of the original surveyor as nearly as possible; that under no circumstances is he to depart therefrom—citing Section 2990, L. O. L., and *Trinwith* v. *Smith,* 42 Or. 239 (70 Pac. 816), and other cases. It is stipulated by the respective counsel for the parties:

"That said line is drawn on the west bank of said Willamette River at the ordinary high-water mark as it now exists, and that all lands between said present line of the ordinary high-water mark and the original line as established by the United States government is now covered by the river at ordinary high water."

It is well settled that, on an appeal from a judgment in a law action tried without a jury, we are to determine whether there was any competent evidence to support the findings. The main question is: What is the meaning of that part of the agreement providing for a survey of the property, and that if there be less than a certain number of acres, then the purchase price stated shall be rebated? It is apparent from the contract that this provision was made for a survey of land, and not of the river, or of land submerged by water. It may be said that below ordinary high-water mark land is deprived of its usefulness as land by the action of the water remaining upon it so permanently, and becomes what we all know as the bed of the river: *Paine Lbr. Co.* v. *United States* (C. C.), 55 Fed. 854, 865; *Sun Dial Ranch* v. *May Land Co.,* 61 Or. 205 (119 Pac. 758). The beach or shore of our rivers is the actual as well as the nominal bed of the river: Hoch,

Rivers, § 7. All is river or river's bed which is contained between the two banks and the high-water line on them, and all is bank or land which embraces the waters in their ordinary full tide: Land in New Orleans, called the Batture, 17 Am. St. Papers, 91.

In surveying fractional portions of public lands bordering on navigable rivers, meander lines are run, not as boundaries of the tract, but for the purpose of determining the sinuosities of the banks of a stream, and as the means of ascertaining the quantity of the land in the fraction, subject to sale, which is to be paid for by the purchaser. In preparing the official plat from the field-notes, the meander line is represented as the border line of the stream, and shows to a demonstration that the watercourse, and not the meander line as actually run on the land, is the boundary: *Railroad Co.* v. *Schurmeier,* 7 Wall. 272 (19 L. Ed. 74) ; 14 Ballard's Law of Real Property, § 45. This rule has been expressly approved by this court in *Minto* v. *Delaney,* 7 Or. 337, 342. See, also, *Moore* v. *Willamette T. & L. Co.,* 7 Or. 356, 357. It has become a settled rule of law in this state that the stream or other body of water, and not the meander line as actually run on the ground, is the boundary of the riparian owner: *Weiss* v. *Oregon Iron & Steel Co.,* 13 Or. 496, 497 (11 Pac. 255) ; *Turner* v. *Parker,* 14 Or. 340, 341 (12 Pac. 495) ; *French Livestock Co.* v. *Springer,* 35 Or. 312, 317 (58 Pac. 102) ; *Cawlfield* v. *Smyth,* 69 Or. 41 (138 Pac. 227).

The case at bar involves a contract almost identical with that in question in *Sun Dial Ranch* v. *May Land Co.,* 61 Or. 205 (119 Pac. 758), where it was held that the point to which the water rises in ordinary seasons of high water forms the boundary of the title of the riparian owner; that is, that the stream, and not the actual meander line as run on the ground, is such

boundary. In that case it was agreed that in the ascertainment of the number of acres sold, for the purpose of fixing the amount of the consideration to be paid, the ordinary high-water mark on the Columbia River is the line of demarcation between the land which should be measured and the bed of the river. It is fair to assume that the parties in the present case contracted with that decision in view: See, also, *Parker* v. *Taylor,* 7 Or. 435, 445; *Johnson* v. *Knott,* 13 Or. 308 (10 Pac. 418).

Taking the stipulation as to the survey of the land, its description, and all the contents of the agreement of the parties bearing thereon, it is clear that the surveyor properly followed the exact survey of the United States government in every respect except the river line, and that he properly followed the river boundary of this land along the line of ordinary high water as it now exists, and that this was the agreement of the parties as shown by the contract. There was competent evidence to support the findings made by the trial court. Section 2990, L. O. L., and the cases cited in plaintiff's brief, relate to the establishing and relocating of lines which constitute the boundaries of legal subdivisions of public lands, and the re-establishing of government corners, and do not apply to meander lines which are not boundary lines. If plaintiff's position were correct, then, had there been an accretion, instead of an erosion, defendant could have claimed the benefit of the same under his contract, and the plaintiff could not have collected therefor, if the stipulation had been for the payment of so much an acre. It is well established that accretions always pass by a deed of the original upland owner, unless expressly reserved by the grantor. It does not appear to us that the parties contemplated that the plaintiff

81 Or.—11

was selling the defendant acres of land which had been carried away to the sea or which were submerged below ordinary high-water mark.

It is practically claimed by plaintiff that, because of the fact that it is possible that the property may be restored or will accrete and belong to the owner, he should collect for the acreage as embraced by the meander line. While it is true that accretion is the right of one owning the land on the border of a stream to the additions imperceptibly made to his land by the action of the water, yet such right would be that of the owner at the time the accretion is made, and not some former owner. The claim of plaintiff is tantamount to an assertion of a right to a gain in this respect after the date of sale, without a chance of loss by erosion. After the conveyance was made, these are matters which affected the grantee in that conveyance. It appears that, when the parties used the word "survey" in paragraph V, they did it advisedly and with a definite purpose. It is evident that the plaintiff intended to sell, and the defendant to buy, a definte quantity of land at $50 an acre, that both parties knew that the river bank had changed its location, and that an actual survey would be necessary to ascertain the *quantum* of land.

Finding no error in the record, the judgment of the lower court is affirmed.          AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.

MR. JUSTICE EAKIN absent.