Argued July 14, affirmed September 19, rehearing denied October 17, 1916.

## ELWERT v. KNAPP.

(159 Pac. 1027.)

**Judgment—Conclusiveness—Title to Property.**

1. It having in a suit between E. and R. been finally decreed that R. was owner of certain land, which he claimed as successor to E.'s vendee, and that E. had no interest therein, E. is estopped, in a suit to enjoin defendant city from paying R. the purchase price thereof, whether suing as claimant to the property or as taxpayer, to assert that R., or the city as his grantee, has no title to the property.

[As to elements necessary to conclusiveness of judgment in another action, see note in 8 Am. St. Rep. 229.]

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.   Statement by MR. JUSTICE MCBRIDE.

This is a suit by Carrie M. Elwert, as a taxpayer of the City of Portland, against F. C. Knapp, substituted for F. W. Mulkey, Ben Selling, John H. Burgard, Charles B. Moores, Dan Kellaher, as Dock Commissioners of the City of Portland, and the City of Portland, a municipal corporation, to restrain the city from paying the sum of $40,000 to William Reid as the purchase price of the following described property:

"Beginning at a point on the north line of East Washington Street 100 feet west of the west line of Water Street, and running thence westerly along the north line of East Washington Street to the low-water mark of the Willamette River, a distance of about 159 feet more or less; thence northerly along the low-water mark of the Willamette River to a point 50 feet north of the point of beginning; thence east 159 feet more or less to a point 100 feet west of the west line of Water Street; thence south 50 feet to the point of beginning, together with the right to wharf out to the established harbor line of the Willamette River."

It is alleged that Reid has no title to said property, that the payment of any money therefor will be a waste of the funds of the city, and impose a great and unnecessary burden upon the taxpayers, and that plaintiff is a large taxpayer and will be especially damaged thereby.

The defendants answered by a general denial of the allegations of the complaint respecting the lack of title in Reid, and alleged that the commission had purchased of him all of blocks 1 and 2, as shown on the plat of East Portland, which former municipality is now included in the City of Portland, and that, there being some question raised as to the validity of Reid's title to the south 50 feet of block 2 and the water and

wharfage rights adjoining. and appurtenant thereto, the commission had by agreement with Reid withheld payment of the sum of $40,000 of said purchase price until it should be ascertained that neither the plaintiff nor the heirs of Arthur H. Johnson, deceased, had any estate or interest in said property; that a suit is now pending between the City of Portland and the heirs of said Arthur H. Johnson for the purpose of settling such claims as they may have, if any, in said property; that defendants do not intend to pay said sum of money until final adjudication of the alleged claims of said heirs shall have been had in such court. The defendants by way of cross-complaint allege:

"That defendant City of Portland is the owner in fee simple and in possession of the property described as beginning at a point on the north line of East Washington Street 100 feet west of the west line of Water Street, and running thence westerly along the north line of East Washington Street to the low-water mark of the Willamette River; thence northerly along the low-water mark of the Willamette River to a point 50 feet north of the south line of block 2 in East Portland, according to the duly recorded plat thereof, situate in the corporate limits of the City of Portland, county of Multnomah, State of Oregon, said distance being measured at right angles to said south line; thence east parallel with the south line of said block 2 to a point 100 feet west of the west line of East Water Street measured at right angles to said west line; thence south 50 feet to the place of beginning—together with the right to wharf out to the established harbor line of the Willamette River and also all river, water and wharf rights, and all other rights appertaining or appurtenant to said property; that said property embraces a part of block 2 in said East Portland, all of which is owned by and in the possession of said City of Portland, together with all the river, water and wharf rights and privileges adjacent or appurtenant thereto, and all other rights thereunto

belonging or appertaining; that plaintiff claims some right, title or interest in or to said property or some part thereof, the exact nature and extent of which is to plaintiff unknown, but whatever the same may be the same is wrongful."

Then follows a prayer that plaintiff's suit be dismissed; that defendants' title to the premises be declared valid and quieted; and that plaintiff be enjoined from asserting any estate, right, or interest therein. The plaintiff answered claiming title in herself by mesne conveyances from James B. Stephens, the original grantee of the United States, and his successors, and by way of separate reply alleged:

"That on the nineteenth day of May, 1909, one M. W. Parelius, without right or title to any real estate described in the deed except lot 5, block 2 of East Portland, executed a pretended deed attempting to convey to one William Reid lot 5, block 2, together with the premises beginning at the high-water mark of the Willamette River on the western prolongation of the north line of East Washington Street, and running thence westerly to the United States harbor line of the Willamette River; thence northerly along the harbor line 50 feet; thence east to the high-water mark of the Willamette River; thence south 50 feet to the point of beginning—which paper is recorded in Book 455, on page 284, Deed Records of Multnomah County, Oregon; that on the tenth day of April, 1865, one James B. Stephens filed a plat of the City of East Portland in the office of the county clerk of Multnomah County, Oregon, which plat is recorded in Book F, on page 116, and said plat is the plat referred to in the deed alleged to have been executed by said William Reid to the City of Portland, and said plat shows block 2 and a scale of distance is set forth on said plat, and no lots are numbered on the blocks of said plat, but a key block is also set forth upon said plat showing the manner and extent of numbering the lots contained in a block, and that said scale and said

key block show that block 2 is 160 feet on the south side of said block and 116 feet on the north side of said block and 200 feet on the east side of said block, and that lots are 100 feet east and west and 50 feet north and south, except such lots as are contained in fractional blocks, in which case lots 1, 2, 3 and 4 are 50 feet from the north line to the south line and such distance from the east line to the west line as there is distance between a point 100 feet west of the east line of said fractional blocks and the western boundary of said fractional blocks, as shown on said plat, in accordance with the scale shown on said plat; that said premises described in the complaint according to the said plat of East Portland would be designated and described as lot 4, block 2, of East Portland; that the Willamette River is a tidal stream, and the ordinary tide is 2½ feet above low water, and the ordinary low water of the Willamette River is zero, and said zero is .96 of a foot above mean sea level at Astoria, and mean sea level at Astoria is 4 feet above mean low water at Astoria, and ordinary high water of the Willamette River is 3 feet above zero; that at the time of the execution of said deed by said Parelius to said William Reid May 19, 1909, the elevation of the west line of lot 5 was 12.4 feet above said zero, and the elevation of the western line of block 2, as shown by the plat, between the south line thereof and a line 50 feet north of said south line, was 8.1 feet, and ever since have been and now are the same elevations as aforesaid, and the water line at zero stage of the river is 195.5 feet west of the west line of lot 5, block 2, and that the water line on May 19, 1909, was, ever since has been, and now is the following distances west of the west line of lot 5, to wit: At 1 foot above zero, 126 feet; at 2 feet above zero, 113.7 feet; at 3 feet above zero, 102 feet; at 4 feet above zero, 92.5 feet.''

The defendants filed a supplemental answer setting up the fact that since the original answer the suit begun by the plaintiff against the heirs of A. H. Johnson had terminated in a decree adjudging that the

81 Or.—84

City of Portland was the owner of the property in dispute and forever quieting its title thereto.

It was also alleged as a bar to plaintiff's claim in this suit and as ground for affirmative relief that in the case of *Carrie M. Elwert* v. *William Reid,* 70 Or. 318 (139 Pac. 918, 141 Pac. 540), which was finally decided in this court on the ninth day of May, 1914, it was adjudged and decreed that Carrie M. Elwert had no right, title or interest in lot 5 of block 2, and that the premises lying west of lot 5, and between it and the harbor line of the Willamette River, are pertinent to lot 5; that said William Reid, the predecessor in title of defendant City of Portland, was the owner of the exclusive right of wharfage and possession in and to the same, and that Carrie M. Elwert has no right, title or interest in and to said real property or any part of said right of wharfage; that her claims thereto were null and void, and that she was by said decree enjoined and restrained from asserting any right to said property; that in May, 1915, Reid relinquished to the city the right to maintain a water-pipe across said premises and removed the pipe, and that his alleged easement across said premises had thereby become extinguished; that about July 7th M. W. Parelius and wife released and quitclaimed to the City of Portland all their interest in said property. By stipulation filed it was agreed that the matter in the supplemental answer should be treated as denied so far as it affected any right of plaintiff.

There was a trial and findings and decree for defendants, and plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. George S. Shepherd* and *Mr. W. W. McCredie,* with an oral argument by *Mr. Shepherd.*

For respondents there was a brief over the names
of *Mr. Henry A. Davie, Mr. Walter P. La Roche, Mr.
Lyman E. Latourette,* and *Messrs. Boothe & Richardson,* with oral arguments by *Mr. J. F. Boothe* and *Mr.*
*Davie.*

MR. JUSTICE McBRIDE delivered the opinion of the
court.

The decision of this case depends upon the construction of certain conveyances and adjudications of
the Circuit Court of Multnomah County and of this
court, which when analyzed indicate to our minds that
plaintiff has no standing here.   As before stated, the
original title to the land lying adjacent to the Willamette River on the east side thereof was in James
B. Stephens.   On December 28, 1861, Stephens filed
a plat of the then City of East Portland, in which that
part relating to the property in controversy is as follows:

The map did not indicate the subdivision into lots
and blocks, but a legend and scale which is shown
above on the accompanying diagram indicated that
complete blocks were approximately 200 feet square,
and that these were subdivided into lots 50 feet north

and south by 100 feet east and west. If there existed
land upon which the plat could take effect, there would
be upon the southerly side of block 2 a complete lot
5 and a fractional lot 4; all depending upon where the
line of ordinary high water was at the time the plat
was filed. The contention as to whether the alleged
lot 4 was below the line of ordinary high water, and
therefore not included in the Stephens' donation
claim, was first litigated in the case of *Johnson* v.
*Knott*, 13 Or. 308 (10 Pac. 418). It appeared in that
case that Stephens had conveyed to Knott's grantors
lot 5 in block 2, and the respondents, who owned and
operated a ferry at the foot of L Street, now East
Washington Street, which is immediately south of
block 2, drove piling in front of the alleged lots 3 and
4, block 2, in order to sheer their ferryboat into the
slip at L Street. Subsequent to his conveyance to
Knott's grantors, and in 1874, Stephens had conveyed
the alleged lots 3 and 4, in block 2, with other realty,
to A. H. Johnson, who brought an action against him
to recover the possession of the alleged lots. Under
instruction of the court, which substantially submitted
the question of the right of Stephens to include these
lots in his plat, the jury returned a verdict for the de-
fendant Knott, but there were other issues involved
which would have justified the verdict even if the evi-
dence had shown that the whole or part of lot 4 was
not a part of the shores and waters of the Willamette
River. The judgment of the court was that the plain-
tiff, Johnson, was not entitled to the possession of the
property, and, this judgment having been affirmed, we
hear of no further contention of Johnson in regard to
it; he seemingly having acquiesced in the theory that
the property formed part of the banks and bed of the
river, and that Stephens had no title thereto. If

this were actually the case, the act of 1874 granting overflowed lands upon the Willamette River to the adjoining bank owner operated to vest the title to the alleged lot 4 in Knott, whose title to lot 5 was indisputable; but it is not clear that the jury found, or intended to find, or that there is necessarily included in their verdict a finding, that lot 4 did not exist, and the evidence here tends to show that a portion thereof was above ordinary high water, and in that event the act of 1874 inured to the benefit of Johnson. But whether it is the successors of Knott or the heirs of Johnson who succeeded to the title to lot 4 is immaterial here in view of subsequent conveyances and decrees, as we will presently show. On June 24, 1891, the heirs of Levi Knott mortgaged lot 5 and appurtenances to J. B. Elwert, the mother of plaintiff, and on foreclosure the property was sold to this plaintiff, who received a sheriff's deed March 1, 1896. On October 21, 1905, Carrie M. Elwert entered into a written agreement with H. P. Palmer, whereby she agreed to sell and convey to him lot 5, in block 2, together with all riparian rights thereto for $3,000. The agreement provided that Palmer might in the name of Carrie M. Elwert prosecute and control any necessary suits to quiet title to the premises, and that "all lands, rights and privileges owned or claimed by said Carrie M. Elwert between Water Street and the Willamette River is also to be conveyed by Carrie M. Elwert to H. P. Palmer." On the theory that the west line of the Stephens donation claim was east of lot 4 and upon lot 5, a conveyance of lot 5 and the appurtenances and riparian rights would include all of the alleged lot 4; but, evidently to make assurance doubly sure, the contract contained also a description which included all of lot 4, so that Palmer became by this contract the

equitable owner of lot 5 and of whatever interest Carrie M. Elwert had in the property between that and the river. The contract was immediately assigned by Palmer to M. W. Parelius, who, in fact, was the real principal in the transaction. On the 26th of October, 1905, Carrie M. Elwert, pursuant to her contract with Palmer, commenced a suit to quiet title to lot 5 and the property included in lot 4, not describing it as a lot, but by metes and bounds; the defendants being P. H. Marley, H. E. Noble and J. Olson, who in their answer disclaimed any title to lot 5, but claimed title to the alleged lot 4 by virtue of a sale for delinquent street assessments and by a sheriff's sale for delinquent taxes, describing said lot as such as well as by metes and bounds. After this disclaimer by Marley and others of title to lot 5, Carrie M. Elwert, in August, 1906, conveyed to Parelius lot 5, with the appurtenances. The suit continued as to the residue of the property. The plaintiff, Elwert, in her reply to the answer of Marley, and others, denied that any such lot as the alleged lot 4 existed, pleading the case of *Johnson* v. *Knott,* 13 Or. 308 (10 Pac. 418), to that effect, and alleged that defendants Marley and others, as successors to Johnson by certain tax deeds, were estopped to assert the existence of lot 4, in substance claiming the wharfage and riparian rights on the Willamette River west of lot 5 as appurtenant to that lot. On December 24, 1906, a decree was entered that Carrie M. Elwert is the owner in fee of the property described as commencing at the southeast corner of block 2, East Portland; thence west along the north line of East Washington Street to the Willamette River; thence north down said river 50 feet; thence east and parallel with said north line of East Washington Street to the east

line of said block 2; thence south to the place of beginning—together with the exclusive right of wharfage from said land out to the navigable waters of said river, and is the owner of said right of wharfage in, to and upon those premises lying below ordinary high-water mark of the Willamette River fronting and abutting upon said lot 5, block 2, East Portland, out to the established harbor line of said river, and is entitled to the undisturbed and immediate possession thereof; that the chief of police's and sheriff's deeds referred to in the answer are null and void; and that the defendants be enjoined from claiming or asserting any right, title or interest in or to said property. On May 19, 1909, a mandate from the Supreme Court was entered dismissing an appeal and affirming the foregoing decree. On October 23, 1906, H. P. Palmer and wife made a quitclaim deed to M. W. Parelius of the property described as commencing at the southeast corner of block 2 in East Portland, and running thence westerly along the north line of East Washington Street to the Willamette River; thence down said river 50 feet; thence east parallel with the north line of East Washington Street to the east line of said block 2; thence south along the east line of said block 2 to the place of beginning, being fractional lot 5 of said block 2 in East Portland—together with the exclusive right of wharfage from said land and out to the navigable waters of the Willamette River. On May 19, 1909, M. W. Parelius and wife conveyed to William Reid all of lot 5, block 2, in East Portland, and all riparian rights and right of wharfage in and to that portion of the bank of the Willamette River fronting on said lot 5 described as beginning at a point in the north side of East Washington Street where the same is intersected by the high-water line of the Willamette

River; thence west along the westerly prolongation of the north line of said East Washington Street to the harbor line established by the United States; thence northerly along said harbor line to a point west of a point 50 feet north of the place of beginning; thence east to the high-water mark of the Willamette River; thence along said high-water mark to the place of beginning. Under the terms of her contract with Palmer it was the duty of Carrie M. Elwert at once to convey the apparent title thus obtained by this decree to Parelius, his assignee, who by the terms of his contract and the payment of the purchase price was already the equitable owner of the property recovered; but, true to her character as a perennial litigant, which the records of this court abundantly establish, she sought to collect for herself the costs and disbursements of the suit and to appropriate them to her own use, and Parelius was compelled to again go into court and set up his contract and enjoin her from so doing. The court found with the plaintiff. Upon August 5, 1909, J. B. Elwert, plaintiff's mother, began a suit against William Reid and M. W. Parelius to quiet title to the property obtained by the decree in *Elwert* v. *Marley et al.*, alleging that Carrie M. Elwert held the property in trust for her, and had no right to convey it. This suit, being decided adversely to plaintiff, was appealed to this court. Mrs. J. B. Elwert having died pending the appeal, Carrie and her brother C. P. Elwert were substituted as plaintiffs; and we have Carrie M. Elwert as a substituted plaintiff prosecuting a suit to have Carrie M. Elwert, alleged trustee, declared guilty of a gross breach of trust, and demanding that the transaction involved therein be set aside. The result of this appeal to the Supreme Court was a decree for the defendants affirming the decree of the Circuit Court, which decree was as follows:

"This cause coming on to be heard upon the motion of the defendants for a decree in accordance with the findings of fact heretofore made and filed herein by the court, and it appearing that the court has heretofore made its findings of fact and conclusions of law in this suit, which are now on file herein, said motion is allowed. It is therefore ordered, adjudged and decreed that defendant William Reid is the owner in fee simple of lot 5 in block 2 in East Portland, Multnomah County, according to the duly recorded map and plat thereof; that ordinary high-water mark in the Willamette River is entirely within the boundaries of said lot 5 for the whole width thereof; that the premises lying west of said lot 5 and between it and the harbor line in the Willamette River are appurtenant to the said lot 5, and that defendant William Reid is the owner of an exclusive right of wharfage and possession in and of the same; that plaintiff has no right, title or interest in or to any part of said real property or in or to any part of said right of wharfage and possession, and that her claims thereto are null, void and of no effect; and that she and all persons claiming or to claim by, through, or under her be and they hereby are perpetually and forever enjoined and restrained from claiming any right, title or interest in or to said premises or in or to said right of wharfage and possession and from interfering in any way with the possession and right of possession of defendant William Reid therein and thereto. It is further ordered and decreed that the plaintiff's complaint be and the same hereby is dismissed, and that the defendants recover their costs and disbursements herein from the plaintiff, taxed at $95."

The decree settled all claims of Carrie M. Elwert to the property here in dispute, and, so far as she is concerned, whether suing as a claimant to the property or as a taxpayer, or in any other character, she is estopped from asserting that William Reid, or his grantee, the City of Portland, has no title to the property.

It is evident that the title to the disputed premises was either in the Elwerts or in the heirs of Johnson, and it appears that the city has brought suit to quiet title against the heirs of Johnson, and that they have defaulted. It is evident that Reid's claims upon the property were such that it would have been impolitic for the city to have purchased the other property without acquiring them; and we are satisfied that by acquiring them it extinguished the last vestige of adverse title, insomuch as it appears here that its title to any possible claim by the heirs of Johnson has been extinguished and quieted by the suit brought by it for that purpose against the heirs of Johnson.

The decree of the Circuit Court is therefore affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE BEAN concur.