Argued March 25, decided May 26, 1908.

## ABRAHAM *v*. MILLER.
## MILLER *v*. ABRAHAM.

[95 Pac. 814.]

JUDGMENT—EQUITABLE RELIEF—WANT OF SERVICE OF PROCESS.

1. Equity has jurisdiction to grant relief against a judgment taken by default on a false return of service of process where in fact there was no service, but will not grant such relief, except on a clear, satisfactory, and convincing proof of a want of service of process by the officer making the return, which return is *prima facie* evidence of the facts recited therein.

PROCESS—SERVICE—RETURN.

2. The summons and complaint served on defendant correctly gave his name as "Albert A." The return of service of the summons showed personal service on defendant, and recited that service was made "on the within-named defendant, Alfred A." *Held*, that the name "Alfred" instead of "Albert" in the return was a mere clerical error, and did not mislead defendant.

JUDGMENT—EQUITABLE RELIEF—WANT OF SERVICE—EVIDENCE—SUFFICIENCY.

3. In a suit to set aside a default judgment on a return of service of summons, evidence *held* not to show that the return was false, or that there was in fact no service essential to give the court jurisdiction to grant relief.

APPEAL—REVIEW—HARMLESS ERROR—AMENDMENT OF PROCESS.

4. Where the return of service of process when amended was no stronger than it was before, the allowance of the amendment was not erroneous.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. COMMISSIONER SLATER.

On May 9, 1902, B. E. Miller filed his complaint in Multnomah County in an action against Albert Abraham to recover a sum of money on an account. Summons directed to Albert Abraham, the defendant, was issued and delivered to the sheriff on that day for service, and on the 16th the same was filed in the cause with the following return indorsed thereon:

"State of Oregon, County of Multnomah—ss.:

I, William Frazier, sheriff of said state and county, do hereby certify that I served the within summons within said state and county, on the 9th day of May, 1902, on the within named defendant, Alfred Abraham, by personally delivering a copy thereof, prepared and certified to by me, as sheriff, together with a copy of the complaint, prepared and certified to by S. C. Spencer, attorney for plaintiff, to said Alfred Abraham.

Wm. Frazier,

Sheriff of Multnomah County, State of Oregon,
By Penumbra Kelly, Deputy."

No appearance was made by defendant, and on June 6, 1902, judgment by default was entered for the amount demanded.   Afterwards, and on October 25, 1906, Abraham instituted this suit to enjoin the issuance of execution, and to set aside and cancel the judgment, alleging, in substance, that prior to service of the summons he settled the matter in controversy with Miller, who, it is averred, agreed that service should not be made and that the action be dismissed; that thereafter and on the same day he met the deputy sheriff, who informed Abraham that he desired to serve a complaint and summons in the action brought against him by Miller, but that before any service was made, Abraham informed the deputy that the case had been settled and compromised, and it had been agreed that there should be no service of summons and complaint in the action, and requested the deputy, before making such service, to verify the same by making inquiry of Miller, to which, it is alleged, the deputy agreed, and that he (Abraham) understood no service was to be made; that a return was made to the effect that the summons and complaint were served on one Alfred Abraham on May 9, 1902, but that in fact no service was made; that at the time, he was and ever since has been, a resident of Douglas County, and had no knowledge of the making of the return of service of the summons or entry of the judgment until about August 1, 1906, when a transcript was filed in Douglas County; that defendant threatens to cause execution to issue against plaintiff's property, and that he has a meritorious defense to the action.

The answer denies all the material allegations of the complaint, excepting the commencement of the action at law, and that Kelly, the deputy sheriff, met the plaintiff herein and informed him that he desired to make service upon him of a complaint and summons in that action, all of which is expressly admitted, with the additional ad-

mission that service thereof was made upon the defendant therein in Multnomah County by Kelly, as deputy sheriff. The making of the return, the entry of the judgment, and that an attempt is being made to collect the judgment are also admitted. After the taking of the testimony findings were made and a decree was entered dismissing the complaint, from which plaintiff appeals.

AFFIRMED ON BOTH APPEALS.

For appellant there was a brief over the name of *Mr. Chester V. Dolph,* with an oral argument by *Mr. Albert Abraham,* in *pro. per.*

For respondent there was a brief over the names of *Spencer & Farrell,* with an oral argument by *Mr. Wilfred E. Farrell.*

Opinion by MR. COMMISSIONER SLATER.

There are two appeals to be considered—one from an action at law upon the motion of plaintiff therein granting leave to the sheriff to amend his return to conform to the alleged facts by changing the name of "Alfred Abraham" to "Albert Abraham," and the other from the decree dismissing the complaint in the equity suit. But the consideration of the latter will be sufficient to determine the whole controversy.

1. It has been established by this court in *Huntington v. Crouter,* 33 Or. 408 (54 Pac. 208: 72 Am. St. Rep. 726), that a court of equity has jurisdiction to grant relief against a judgment taken by default upon a false return of service where there was in fact no service, but that it should not exercise such jurisdiction except upon clear, satisfactory, and convincing proof of a lack of service of process by the officer making the return of service, which return must always be *prima facie* evidence of the material facts recited therein. The return of the officer on the summons in the action recited that the summons was served "on the within-named defendant, Alfred Abra-

ham," etc.  The true name of the defendant is Albert Abraham, which correctly appeared in the summons and in the complaint.  The first question is what probative force, if any, has such a return.  If the return had recited that service was made "on the within-named defendant" without further identification, it would be sufficient when the name of the defendant is correctly set forth in the summons (*Gate City Abstract Co. v. Post*, 55 Neb. 742: 76 N. W. 471), but in the return under consideration there has been added the misnomer "Alfred Abraham."  Does this destroy what would otherwise be a good return?  We think not.

2. The words "the within-named defendant" serve to identify the person erroneously designated as "Alfred Abraham" with "Albert Abraham," the true defendant named in the summons.  If the summons was served upon defendant, as certified by the deputy sheriff, it contained his true name, and it was therefore a good service, and the defendant was thereby in no way misled.  In such case there was nothing to mislead him; for the summons being correct on its face, he had proper and legal notice, and the court acquired jurisdiction of the action.  The certificate shows personal service on the defendant.  The spelling of the name "Alfred" instead of "Albert" is a mere clerical error:  *Sandwich Mfg. Co. v. Earl*, 56 Minn. 390 (57 N. W. 938) ; *Veasey v. Brigman*, 93 Ala. 548 (9 South. 728: 13 L. R. A. 541) ; *Dunn v. Hughes* (Tex. Civ. App.), 36 S. W. 1084.  The real question, then, is whether, within the rule announced in *Huntington v. Crouter*, 33 Or. 408 (54 Pac. 208: 72 Am. St. Rep. 726), there is sufficiently clear and convincing proof of the absence of service to overcome the *prima facie* case made by the return.

3. The plaintiff testifies that he was never served with summons, although he admits that on the 12th day of May, shortly after the complaint was filed, he was in

Portland and met Penumbra Kelly, the deputy sheriff, in the Abington Building, who informed him that he had some papers to serve upon him.   Whereupon plaintiff inquired if it was in the Miller case, and, being informed that it was, he requested that no service be made, explaining that an agreement to settle the case had been made with Dr. Miller, the plaintiff in the action, and that it was understood between them that no service should be made.   After assuring the officer that he intended to remain in the city for some time so that service could be made, if his statements as to the settlement were not true, he asked the officer not to make the service and to verify the matters stated by inquiry of Miller.   This, he testifies, Kelly agreed to do, and put the papers back into his pocket.   The date of this transaction is fixed by the witness as May 12th.   Penumbra Kelly testifies that he was deputy sheriff at that time, and had received for service the summons and complaint in the action; that he knew Abraham personally, and remembers having met him in the Abington Building as testified by Abraham; that it was about 10 o'clock in the morning, but he does not remember the day of the month on which it occurred, nor any conversation that he may have had with him, but he does remember that he was looking for Abraham to deliver this copy of summons and complaint to him, and that he came there for that particular purpose and found him.   While he does not remember that he then handed to Abraham the papers that he went there to serve, yet in explanation of his inability to recall what was said and done at that time he says:

"I could not, I would not be positive about that.   I cannot say positively out of the thousands of papers I have served, that I have always actually put the papers into the hands of the defendant.   I know sometimes I have not done that.   I have had to throw them into the house or leave them in spite of the protests, but I remember having met you there under the circumstances under

which this testimony has stated.   As to the balance of it, it is a perfect blank to me."

But he produces a sheriff's memorandum book kept by himself while he was a deputy, and which contains an entry made by him of the title of the action of *Miller* v. *Abraham*, the date of the receipt of the process as May 9, 1902, the service thereof on the same date upon Alfred Abraham.   Kelly testifies that when he left a copy of a summons and complaint with a defendant, it was his practice immediately to make a memorandum to that effect in this note book, which was kept in the sheriff's office for that purpose, and when the book was filled it was filed away for safe-keeping; that he made a memorandum of service when the service had been made and not before, and that he could remember of but one instance, which occurred in his early experience as an officer, that when he started out to serve a man, met him, had a conversation with him, and then did not serve him; that on that occasion he was instructed that he should never, under any circumstances, bring the papers back. If he failed to make service, he understood that he rendered himself liable in damages.   He testifies, however, that it was the plaintiff herein, and not some other person named Alfred Abraham, whom he met on the occasion when he went to serve the papers, and that he would not have made the memorandum if he had not made the service, but that he cannot testify that such was the fact except from the contents thereof.   How he came to write "Alfred" instead of "Albert" he is unable to explain, except that it was a clerical error.   Now it is admitted by plaintiff that there is some evidence that some person designated as "Alfred Abraham" was served, but he contends that there is no evidence that "Albert Abraham" was served.   But we think it cannot be doubted that the evidence establishes the identity of the person of Albert Abraham, the defendant in the action, with "Alfred

Abraham" named in the return; and it follows that, if there was service upon any one, the plaintiff must have been the person served, as indicated by the return.

4. In the case of *Starkweather* v. *Morgan,* 15 Kan. 274, Mr. Justice BREWER, delivering the opinion of the court, held that the testimony of one witness, wife of her co-defendant, corroborated to some extent by the testimony of her husband, is not enough adverse testimony to the return of the sheriff, which, if not conclusive, is the strongest kind of evidence to warrant the annulment of the judgment. In *Randall* v. *Collins,* 58 Tex. 231, the officer by whom the service purports to have been made testified twice, eight and nine years after the transaction. At first he could not recollect any such service, and because he kept memorandum of his official acts, and had no memorandum of this, and further because by agreement with his principal—an agreement which he acted on—he was not to execute process in that part of the county, he did not believe that the process was served. Subsequently, however, his memory having been refreshed, he changed his opinion, and admitted having some recollection of having served some process on Collins. The sheriff, his principal, testified to the same agreement, and further that he required his deputies to report their official acts to him, and he kept a record of all such acts in a book, but found no record of such service. But it was held that such evidence, while it caused some doubt or suspicion on the question of service, yet it was not sufficient as against the return. It is there said that "it is not like an ordinary issue of fact, to be deter-mined by a mere preponderance of testimony," citing the case of *Driver* v. *Cobb,* 1 Tenn. Ch. 490, which holds that one witness alone will not suffice to successfully impeach a return. In the case now under consideration, while the testimony may create a doubt or suspicion as to the fact of service, yet there is not that certainty of conviction

required to justify the setting aside of the judgment. Pending the trial of the equity suit, and based upon this showing, the lower court upon motion of plaintiff in the law action permitted an amendment of the return to accord with the fact shown. There certainly could have been no error on that account; for, as we have shown, the return when amended was no stronger in its legal effect than it was before, and the case is finally resolved to the important question whether there was in fact service upon Albert Abraham. This issue we have determined against the plaintiff herein. The disagreement between the date of service as shown by the return as having taken place on the 9th, while plaintiff testifies that it was on the 12th when he met Kelly and had the conversation with him, we have treated as unimportant, as the fact of the meeting and the object of the officer's seeking out Abraham is admitted, and the only important inquiry is what took place between them at that time.

As to the alleged settlement plaintiff has also failed to make out a clear case. While he testifies that an agreement to that end was made, he is flatly contradicted by Miller and by Spencer, who was the former's attorney in the action at law, and there being no corroborating evidence, plaintiff must necessarily fail.

It follows that the decree in the one case and the judgment in the other should be affirmed.      AFFIRMED.